NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0813n.06

No. 08-2548

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Dec 18, 2009**
LEONARD GREEN, Clerk

ANTHONY FLEMISTER,

    Plaintiff-Appellant,

      v.

CITY OF DETROIT; FLANAGAN, Lieutenant;
WINKLER, Sergeant; SHANNON DEKUN, Officer;
BRETT LETWIN, Officer; STEVEN PERRY,
Officer; TYMIKSHA PHEASANT, Officer; S.
ROBINS, Officer; LAURA SPLITT, Officer;
ROBERT WINKLER, Officer; JOHN DOE, 1-2;
JANE ROE, 1-2; COUNTY OF WAYNE; J.
HARRIS; JOHNSON; TAYLOR; PESSINA,
Sergeant; CARTER, Lieutenant; KARSSEN,
Sergeant; CLARKE-PRICE, Sergeant; CAROL
KENNEDY-STANLEY; PATRICIA ROBINSON;
SHARPE, Sergeant; LYNN CALDERONE;
RICHARD LEGREAIR; RONALD NUNN; DIANE
ONNIE,

    Defendants-Appellees.

On Appeal from the United
States District Court for the
Eastern District of Michigan

_____/

**Before:**    **GUY, SUTTON, and GRIFFIN, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    Plaintiff Anthony Flemister appeals from

the entry of summary judgment against him with respect to claims arising out of his arrest

pursuant to a felony warrant issued for someone else who used plaintiff's identity. The

district court found that because plaintiff could not demonstrate a constitutional violation as

a matter of law, he could not prevail on his claims under 42 U.S.C. § 1983. Also, since plaintiff did not challenge the validity of the warrant, he could not establish his state law claims of false imprisonment, or assault and battery. After review of the record and the applicable law, we affirm.

## I.

The plaintiff's "mistaken identity" arrest occurred because, when arrested by Detroit Police officers on November 2, 2004, Gregory Sanders identified himself as Anthony Jamal Flemister.[1] Sanders, who is plaintiff's cousin, also gave plaintiff's birth date as his own. When Sanders failed to appear for arraignment, a felony arrest warrant was issued in the name of Anthony Flemister. Plaintiff learned of the outstanding warrant when he was stopped twice by police outside of Detroit. He was detained only a few hours on those occasions because the Detroit police declined to come and take him into custody.

On Friday, August 19, 2005, having applied for a job that would require a criminal background check, plaintiff and his father walked into a Detroit police station and explained that an outstanding arrest warrant mistakenly identified plaintiff as the alleged felon. After plaintiff's identification and the warrant information were checked, he was arrested and booked. Fingerprinted by another officer, plaintiff protested that he was the "wrong person." No investigation was undertaken, and plaintiff was detained. Plaintiff's mother contacted several officers—including the officer who was responsible for investigating the charges in question—to no avail. She and plaintiff gathered enough information, however, to figure out

---

[1]Sanders, a passenger in a stolen vehicle that was stopped, was charged with several felony theft offenses.

that it was Sanders who had used plaintiff's identity when he was arrested.   The next day, Saturday, August 20, 2005, plaintiff was arraigned before a magistrate judge but did not raise the issue of "mistaken identity" even though the charging document named "Anthony Flemister a/k/a Gregory Sanders" as the defendant.  The magistrate judge entered a not guilty plea, ordered that plaintiff be held, and set bond.  Pursuant to that order, plaintiff was transferred to the Wayne County Jail at 3:30 p.m. on August 20, 2005.

At the Wayne County Jail, plaintiff told several sheriff's deputies that he was "the wrong guy," that "his cousin used his name," and that they should "pull up the fingerprints" or "match the photos."  Plaintiff alleged that these deputies did nothing to investigate or follow up on this exculpatory information.[2]  Plaintiff's mother talked to someone at the Wayne County Prosecutor's Office, but was advised to bring it up with the court and counsel. Plaintiff was released on bond at 10:20 a.m. on Thursday, August 25, 2005, after being held in the Wayne County Jail for approximately 4 ½ days.  The charges were dismissed against plaintiff at the preliminary hearing based on the investigating officer's determination from comparison of the photograph taken when Sanders was arrested that, in fact, plaintiff was not the person wanted on the felony charges.

In February 2007, plaintiff filed this action against the City of Detroit, seventeen individual Detroit Police Department employees, Wayne County, and four individual Wayne County employees.  The complaint alleged that the municipal and individual defendants

---

[2]The Wayne County sheriff's deputies testified that they did not remember plaintiff, but would customarily tell an inmate who protested his innocence to bring it up at the next court date, file a grievance, or call someone like his attorney or social worker.

violated plaintiff's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983, and that the individual defendants were liable under state law for false imprisonment, and assault and battery. After discovery was conducted, the defendants moved for dismissal or for summary judgment on a number of grounds, with the Detroit defendants relying on the brief filed by the Wayne County defendants, and plaintiff filed a response in opposition. In an order entered October 22, 2008, the district court concluded that plaintiff's constitutional rights were not violated and that he could not prevail on his state law claims. This appeal followed.

## II.

Plaintiff suggests that we should review the decision as one for dismissal under Fed. R. Civ. P. 12(b)(6). The district court's order, however, entered summary judgment in favor of the defendants and matters outside the pleadings were submitted to and considered by the district court. Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We review the district court's order granting summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).[3]

---

[3]Even under the *de novo* review applicable to dismissals under Rule 12(b)(6), we would affirm. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (accepting the factual allegations as true, the court must determine whether the allegations plausibly state a claim for relief).

## A.      42 U.S.C. § 1983

Defendants argued that the individual defendants were entitled to qualified immunity because "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The two-part test for qualified immunity asks:  (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of the defendants' alleged misconduct. *Pearson  v. Callahan*, 129 S. Ct. 808, 816 (2009) (holding sequential analysis no longer mandatory); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Defendants' arguments on summary judgment focused entirely on the first part of the inquiry, and the district court granted the motion on the grounds that plaintiff failed to demonstrate a constitutional violation in this case.[4]

To establish a § 1983 claim against an individual or a municipality, the plaintiff must identify a right secured by the Constitution or laws of the United States and the deprivation of that right by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).   Here, plaintiff did not challenge the validity of the warrant, but alleged a constitutional violation of the kind articulated in *Baker v. McCollan*, 443 U.S. 137 (1979). There, the Supreme Court suggested that "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time

---

[4]Whether the issue was addressed as the first step of the qualified immunity analysis, or as the dispositive issue on the merits of the § 1983 claim, is immaterial as both ask whether plaintiff has alleged or can prove a constitutional violation.

deprive the accused of 'liberty . . . without due process of law.'" *Id*. at 145.

The Court in *Baker* noted that innocence was largely irrelevant to such a due process claim, explaining that: "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted— indeed, for every suspect released." *Id*. As the Court further explained:

> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers—all of whom may be potential defendants in a § 1983 action—is entirely consistent with "due process of law." Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Id*. at 145-46. In *Baker*, the Supreme Court held that the plaintiff could not demonstrate a due process violation based on his three-day detention over a New Years' weekend by county officials on a valid warrant that mistakenly identified him as the accused.[5]

The plaintiff in *Baker* was named in the warrant because his brother had identified himself as the plaintiff when he was arrested. The brother was also in possession of a

---

[5]The dissent in *Baker* would have held that due process requires that "fair procedures be employed to ensure that the wrong individual is not subject to the deprivations of liberty attaching to pretrial detention." *Id*. at 153 (Stevens, J., dissenting). The majority commented that the analysis employed by the dissent would make it "virtually impossible to reach a conclusion other than that any case of misidentification in connection with an arrest made pursuant to an admittedly valid warrant or concededly on probable cause would constitute a deprivation of liberty without due process of law." *Baker*, 443 U.S. at 146 n.5.

duplicate of the plaintiff's driver's license, although it had been altered to show the brother's picture. As a result, when a felony arrest warrant issued, it was issued in the plaintiff's name. Later, the plaintiff was arrested on that warrant, despite his protestations of mistaken identity. He was detained by the city police for four days and then held for three more days by the county defendants before anyone compared his photograph with the "wanted man." With the mistake discovered, the plaintiff was released. The Court in *Baker* emphasized that the plaintiff did not challenge the validity of the warrant, but alleged that the county officials had made no effort to verify the plaintiff's identity by checking the photographs or fingerprints.

The question of how long such a mistaken-identity detention must be for it to implicate a constitutional due process right was not resolved by the Court in *Baker*. What we do know—and what is dispositive in this case—is that the detention in *Baker* was not long enough even though it continued in the face of plaintiff's protests and the alleged ready availability of photographs and fingerprints that would ultimately clear him. The parallels with this case are obvious. Indeed, as in *Baker*, Flemister maintains that the defendants could have and should have determined sooner from a comparison of the photographs and fingerprints that it was actually Sanders who was wanted on the felony warrant. As the district court recognized, while troubling that a comparison was not made sooner, the question is not what defendants could or should have done but whether what they did violated his constitutional rights.

This court applied *Baker* to a mistaken-identity detention in *Gray v. Cuyahoga County Sheriff's Dept.*, 150 F.3d 579, 582-83 (6th Cir. 1998), and concluded that the 41-day

detention of the "wrong man" in that case was sufficient to assert a due process claim. In reaching this conclusion, the court relied on two district court decisions involving detentions of 12 days and 30 days, respectively, which were found to be sufficient to state a claim upon which relief may be granted. *Id*. at 583. Reversing the grant of summary judgment to the defendants in *Gray*, this court explained that the principal question for the trier of fact on remand would be whether the defendants acted with deliberate indifference in failing to ascertain that the person in custody was not the person wanted on the parole violation warrant. *Id*. That a 41-day detention was held to be sufficiently long in *Gray* does not say much about whether the lapse of time in this case implicates the constitutional due process right articulated in *Baker*.

Nor do the cases cited by plaintiff persuade us that the district court erred in granting summary judgment to the defendants. For instance, in *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), a mentally ill California resident was incarcerated for two years after being extradited to New York on a fugitive warrant issued for someone else with the same last name and date of birth. The Ninth Circuit rejected the California officials' argument for dismissal on the grounds that the plaintiff was in their custody for only one day before the extradition hearing, explaining that, at least at the pleading stage, the plaintiff had sufficiently alleged a denial of due process after arrest and deliberate indifference by the California defendants who detained him on the fugitive warrant without verifying his identity.[6]

---

[6]Plaintiff also argues that a detention of 14 hours was held to be sufficient to state a *Baker* due process claim in *Cleveland v. City of Detroit*, 275 F. Supp.2d 832, 840-41 (E.D. Mich. 2003). In fact, the opinion's brief discussion of the claims asserted against the city defendants did not expressly conclude as much. Whatever inferences might arguably be drawn from the denial of summary judgment do not provide

We find, as the district court did, that this case is materially indistinguishable from *Baker*, and are compelled to conclude that plaintiff cannot establish a constitutional deprivation of liberty without due process of law. As such, summary judgment was properly entered in favor of the defendants on plaintiff's § 1983 claims.[7]

## B.    State Law Claims

To prevail on a claim of false imprisonment, "the plaintiff must show that the arrest was not legal, *i.e.*, that it was made without probable cause." *Tope v. Howe*, 445 N.W.2d 452, 459 (Mich. App. 1989). The assault and battery claims are also barred by the conceded lawfulness of the arrest, as there has been no claim of excessive force in this case. *Id*. Plaintiff argues on appeal that his arrest pursuant to an admittedly valid warrant did not necessarily defeat his claims of false imprisonment under *Flones v. Dalman*, 502 N.W.2d 725, 729 (Mich. App. 1993). Plaintiff's reliance on *Flones* is misplaced.

The court in *Flones* recognized that "an officer who merely executes a warrant that is valid on its face is protected from liability," but concluded that this was not a bar to the plaintiff's claim of false imprisonment in that case. *Id*. That is, the plaintiff's claim could proceed because the defendant had concealed exculpatory information from the magistrate judge who issued the warrant. In this case, there is no similar challenge to the probable cause

---

a basis to reverse the decision in this case. In addition, although the plaintiff was only detained by the city defendants overnight, she was detained by the county defendants for two more weeks before it was determined that she was not the person with the same last name who was sought on the warrant.

[7]Having found plaintiff could not establish a constitutional violation, we need not address either the individual defendants' additional arguments concerning qualified immunity, or the further showing required to establish municipal liability under § 1983. *See generally Pearson*, 129 S. Ct. at 818; *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

to issue the arrest warrant.  The district court did not err in granting summary judgment to the individual defendants with respect to plaintiff's state law tort claims.

**AFFIRMED.**

SUTTON, J., concurring. I join Judge Guy's well-reasoned opinion in full and write separately to point out one unusual feature of this case. In contrast to most mistaken-identity cases, Flemister tried to solve this problem on his own. Rather than being picked up by the police on the basis of a mistaken arrest warrant, Flemister went to the police station to explain the problem, and only then did the police arrest him.

That is not how these cases usually arise. More often than not, the police take someone into custody after a stop of the individual (for, say, a speeding violation) and after the police then learn of an outstanding arrest warrant in the individual's name. At that point, one can understand why the police might give short shrift to a suspect's protestations of innocence. It is less obvious why the police should think that an individual who presents himself to the police to clear up a mistaken-identity arrest warrant does not in fact suffer from a case of mistaken identity.

Future courts, to say nothing of the police, may wish to consider the distinction. The distinction makes no difference here due to the brevity of Flemister's initial confinement, the reality that he offered the defendants no opportunity to correct the mistake at his arraignment and the reality that no cases cited by Flemister (or found by us) have drawn this distinction (which would undermine his claim at step two of the qualified immunity analysis).