RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MURIEL L. HARRIS; ELSIE V. HARRIS,

    *Plaintiffs-Appellants,*

DAVID LEE HARRIS,

     *Plaintiff,*

 *v.*

TD AMERITRADE, INC.,

    *Defendant-Appellee.*

No. 15-5220

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 4:14-cv-00017—Thomas W. Phillips, District Judge.

Decided and Filed: October 8, 2015

Before: BOGGS, SUHRHEINRICH, and SUTTON, Circuit Judges.

---

**COUNSEL**

---

**ON BRIEF:** John Michael Clear, BRYAN CAVE LLP, St. Louis, Missouri, Rodney F. Page, BRYAN CAVE LLP, Washington, D.C., for Appellee. Muriel L. Harris, Elsie V. Harris, Morrison, Tennessee, pro se.

---

**OPINION**

---

SUTTON, Circuit Judge. Elsie, Muriel, and David Harris (mother, father, son) do not like how their broker is holding stock on their behalf. They claim they have a right to another form of stock ownership and filed a lawsuit to that effect. Yet no right of action—at least not

one they have filed—permits them to vindicate the right here. Right or wrong about the underlying form of ownership, they cannot vindicate that position in the absence of a cause of action authorizing the lawsuit. Because neither federal securities law nor Nebraska commercial law gives the Harrises a private right of action for this claim, we affirm the district court's dismissal of their case.

In 2005, the Harrises bought tens of thousands of shares in Bancorp International Group through a TD Ameritrade account. The shares were held in "street name," meaning TD Ameritrade used another entity, Depository Trust & Clearing Corporation, to hold the securities on the Harrises' behalf. *See* U.S. Sec. & Exch. Comm'n, Street Name, http://www.sec.gov/answers/street.htm (last visited Oct. 6, 2015).

Six years later, the Harrises sought to hold some of their Bancorp International stock in another form, namely registered in their name and reflected in a physical copy of a certificate signifying their ownership. *See* U.S. Sec. & Exch. Comm'n, Holding Your Securities—Get the Facts, http://www.sec.gov/investor/pubs/holdsec.htm (last visited Oct. 6, 2015). TD Ameritrade refused to convert the Harrises' form of ownership in this way. It explained that Depository Trust had placed all Bancorp International stock in a "global lock," prohibiting activity in the stock, including changing the Harrises' form of ownership. R. 33 at 10. As it turns out, Depository Trust had imposed the lock because someone had fraudulently created hundreds of millions of invalid shares of Bancorp International stock.

The Harrises found this explanation wanting, and they sued TD Ameritrade to correct the problem. Representing themselves, they alleged that TD Ameritrade had violated an SEC Rule and Nebraska's version of the Uniform Commercial Code. *See* SEC Rule 15c3-3, 17 C.F.R. § 240.15c3-3(b), (h), (*l*); Neb. Rev. Stat. U.C.C. §§ 8-504, 8-506, 8-507, 8-508. They sought an injunction requiring TD Ameritrade to convert the ownership form, and they sought punitive damages. TD Ameritrade removed the case to federal court based on federal question jurisdiction. *See* 28 U.S.C. § 1441(a). The district court dismissed the case under Civil Rule 12(b)(6). *Harris v. TD Ameritrade, Inc.*, No. 4:14-CV-017, 2015 WL 521272, at *4 (E.D. Tenn. Feb. 9, 2015).

The question is whether the complaint alleges a plausible theory of relief after drawing all reasonable factual inferences in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).  The answer is that it does not.  Neither the SEC Rule nor Nebraska's Commercial Code creates a private right of action to vindicate this alleged problem, requiring us to affirm the district court's dismissal of the complaint.

*SEC Rule 15c3-3.*  This rule places assorted obligations on securities brokers and dealers.  One such obligation, and the one the Harrises invoke, gives a consumer an "absolute right . . . to receive . . . following demand made on the broker or dealer, the physical delivery of certificates for . . . [f]ully-paid securities to which he is entitled."  17 C.F.R. § 240.15c3-3(*l*).  The Rule, however, does not create a private right of action.  And neither the section of the Securities Exchange Act of 1934 under which this rule was promulgated, *see* 15 U.S.C. § 78*o*(c)(3)(B), nor any other part of the Act creates a private cause of action related to this right.

Because neither the Rule nor the Act creates a private right of action, that ends the matter.  As we have recently explained, the Supreme Court "presumes that, when a statute contains an enforcement mechanism but does not expressly provide a private remedy, Congress did not mean to permit private enforcement of the statute."  *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 903 (6th Cir. 2014); *see, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).  Other appellate courts have come to a similar conclusion in this context.  *See SEC v. Seaboard Corp.*, 677 F.2d 1301, 1313–14 & n.16 (9th Cir. 1982) (holding that 15 U.S.C. § 78*o* does not create a private cause of action); *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 950 n.15 (3d Cir. 1985) (stating in dicta that there is no implied cause of action under SEC Rule 15c3-3(b)).

The Harrises urge us to imply a private right of action under our equitable powers.  But that exceeds our authority.  "[L]egal remedies to enforce federal statutes must stem from the legislatively enacted statute, not from court-created equitable enforcement doctrines."  *Mich. Corr. Org.*, 774 F.3d at 903.  "If a statute fails to provide a private remedy," we have explained, "the federal courts may not create what Congress did not."  *Id.*; *see Sandoval*, 532 U.S. at 286.  In point of fact, the Supreme Court already has refused an invitation to imply a cause of action in a setting like this one.  At issue in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568–69, 579 (1979), was another section of the 1934 Securities Exchange Act, § 17(a), one that places various

requirements on brokers and dealers to keep records and file reports. In refusing to imply a private right of action to enforce these obligations, the Court reasoned that the provision under which the rule was promulgated "is flanked by provisions of the 1934 Act that explicitly grant private causes of action. . . . Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Id.* at 571–72. We cannot say it any better. And indeed the same is true here. Other sections of the 1934 Act near this one create private rights of action. *See, e.g.*, 15 U.S.C. § 78r; *see also Redington*, 442 U.S. at 571–72. We must honor Congress's choice.

*Article 8 of the Nebraska Commercial Code.* The Harrises separately seek relief on the ground that TD Ameritrade violated several provisions of Nebraska's version of the Uniform Commercial Code. *See* Neb. Rev. Stat. U.C.C. §§ 8-504, 8-506, 8-507(a), 8-508. The relevant provisions impose a variety of duties on entities like TD Ameritrade. The key one invoked by the Harrises says that "[a] securities intermediary shall act at the direction of an entitlement holder to change a security entitlement into another available form of holding for which the entitlement holder is eligible." *Id.* § 8-508. In trying to bring an action under this provision, the Harrises run into the same problem that blocked their path with respect to the SEC Rule. No private right of action exists to enforce this section and other related sections.

The text of the Commercial Code does not create a private cause of action to vindicate these particular rights and says nothing about privately enforceable remedies. No court to our knowledge has identified any such cause of action. That is because "[n]o remedy is specified" under any of these sections and thus "[t]he entitlement holder must . . . seek a remedy under non-[Commercial Code] law." 8A David Frisch, Lawrence's Anderson on the Uniform Commercial Code § 8-508:10 [Rev] (3d. ed. 2014); *see also id.* §§ 8-504:14, 8-506:8, 8-507:8.

Here too the Harrises ask us to imply a private right of action anyway. And here too we must decline. "Without legislative intent to create not just a private right but also a private remedy," the Nebraska Supreme Court has reasoned, "courts cannot create an implied cause of action." *Prof'l Mgmt. Midwest, Inc. v. Lund Co.*, 826 N.W.2d 225, 233 (Neb. 2012). That is true "no matter how desirable [implying a cause of action] might be as a policy matter or how compatible [it is] with the statute." *Id.* Supporting this conclusion is Nebraska's creation

of private rights of action elsewhere in the Commercial Code. *See, e.g.*, Neb. Rev. Stat. U.C.C. § 8-112(e). One subsection of § 8-507 even gives a right to damages in some instances. *See id.* § 8-507(b). But the Harrises' claims do not implicate this provision or any of the other rights of action. The Nebraska legislature created private rights of action when it wanted to, and for reasons of its own did not create one here. Under these circumstances, we have no authority to create one of our own.

None of this leaves the Harrises (or anyone else in their shoes) without recourse. They may ask the SEC or a state agency to enforce the federal or state law as the case may be against TD Ameritrade. "The initiation of a proceeding before a regulatory commission" may be "the best[] remedy available," Anderson § 8-504:14, for violation of the duties imposed by the SEC Rule or the Commercial Code. For all we know, a non-preempted state common-law right of action may exist in circumstances like these.

In their appellate briefs, the Harrises claim (for the first time in this litigation) that TD Ameritrade violated its fiduciary duties by refusing to convert the Harrises' ownership form. That is too late, and accordingly the Harrises have forfeited the claim. *See Keweenaw Bay Indian Cmty. v. Naftaly*, 452 F.3d 514, 532 (6th Cir. 2006). We "rarely exercise[] . . . discretion" to review a forfeited argument, *see Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008), and it makes little sense to do so here because the Harrises' argument is not "presented with sufficient clarity and completeness for us to resolve" the claim, *Jones v. Caruso*, 569 F.3d 258, 266 (6th Cir. 2009).

For these reasons, we affirm.