**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0057n.06

Case No. 17-1096

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 31, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARVIN SEALES, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CITY OF DETROIT, MICH., et al., | ) | MICHIGAN |
| | ) | |
| Defendants, | ) | |
| | ) | |
| DETROIT POLICE OFFICER THOMAS | ) | |
| ZBERKOT | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: CLAY, GIBBONS, and COOK, Circuit Judges.

CLAY, Circuit Judge. Defendant-Appellant Detroit Police Officer Thomas Zberkot ("Zberkot") appeals from the judgment entered by the district court denying in part his motion for summary judgment. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

**I.      Factual History**

Thomas Zberkot is a police officer for the City of Detroit Police Department who was on assignment to the Detroit Fugitive Apprehension Team ("DFAT"). On January 18, 2012,

Zberkot and other members of DFAT were assigned to execute an arrest warrant for Rodrick Siner ("Siner") for charges including assault with intent to commit murder. Apparently, Siner used a number of aliases, including "Marvin Seals."

Marvin Seales was working as a technician at the Reinhart Food Service facility. The team, including Zberkot, arrested Seales during his shift at the facility. Seales was taken to the Detroit Police Department Northeastern District for processing. Zberkot processed Seales. Seales told Zberkot on several occasions that he was not Siner and they had the wrong individual.

Seales was transferred to the Wayne County Jail. He was incarcerated from January 18, 2012 until February 1, 2012. On February 1, during his preliminary examination, the victim in Siner's case saw Seales and told the prosecutor he was the wrong person. The prosecutor moved to dismiss based on insufficient evidence. The judge signed an Order of Dismissal detailing that Seales was not the correct defendant and that he was "wrongly arrested and detained from 1/18/12–2/1/12." (R. 70-13, Order of Dismissal, PageID # 456.)

## II. Procedural History

On April 9, 2013, Seales filed an Amended Complaint against the City of Detroit, Zberkot, and Wayne County. Seales brought six counts against Defendants including: (I) a § 1983 claim for false detention, arrest, imprisonment, and confinement against the City of Detroit; (II) a false/wrongful arrest and false imprisonment claim against all Defendants; (III) a willful and wanton misconduct, deliberate indifference/gross negligence claim against all Defendants; (IV) an intentional infliction of emotional distress claim against all Defendants; (V) a § 1983 claim for deprivation of rights under the First, Fourth, Fifth, and Fourteenth

Amendments to the US Constitution and Article I, §§ 5, 6, 11 and 17 under the Michigan Constitution against Zberkot; and, (VI) a *Monell* claim against the City of Detroit.

On July 23, 2013, Defendants filed a Notice of Suggestion of Pendency of Bankruptcy Case and Application of the Automatic Stay after the City of Detroit ("the City") filed for bankruptcy. On July 29, 2013, the district court entered an Order administratively closing the case without prejudice. The Order provided that the case may be reopened upon motion should the City emerge from bankruptcy. On October 6, 2015, Seales filed a Motion to Set Aside Bankruptcy Stay and Reopen Case after the City emerged from Bankruptcy Court protection. On November 17, 2015, the district court granted Plaintiff's motion.

On September 9, 2016, Defendants City of Detroit and Zberkot filed a Motion for Partial Summary Judgment. On September 14, 2016, Defendants filed an Amended Motion for Partial Summary Judgment. Wayne County was dismissed from the case after several counts were dismissed by stipulation, and the remaining count was dismissed on summary judgment.

On January 3, 2017, the district court issued its Opinion and Order granting in part and denying in part Defendants City of Detroit and Zberkot's Amended Motion for Partial Summary Judgment. The district court granted summary judgment as to Counts I, II, III, IV, and VI against the City, and dismissed all claims against the City. The court granted summary judgment as to Count IV (intentional infliction of emotional distress) for Zberkot, but denied summary judgment as to Counts II (false/wrongful arrest and false imprisonment), III (gross negligence), and V (Section 1983) against Zberkot. The district court found that Zberkot was not entitled to qualified immunity on the § 1983 claim, that he was not entitled to immunity under Michigan law for the gross negligence claim, and that because he did not argue he should be shielded by immunity, he was not entitled to immunity on the false arrest and false imprisonment claim.

On January 27, 2017, Zberkot timely filed his notice of appeal. Zberkot argues that he is entitled to qualified immunity because he did not "violate clearly established rights guaranteed by the U.S. Constitution." (Zberkot Br. at 4.) He also argues that he is immune from liability under Michigan law for the claims of gross negligence and false arrest and false imprisonment. Therefore, he argues he is entitled to summary judgment as a matter of law.

## DISCUSSION

### I. QUALIFIED IMMUNITY

#### Standard of Review

This Court reviews a district court's denial of summary judgment on qualified immunity grounds *de novo*. *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008) (citing *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1176 (6th Cir. 1996)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party must demonstrate the "basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (internal citations and quotation marks omitted). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal citations and quotation marks omitted). The reviewing court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. A court should view the facts and draw all

reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**Analysis**

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To determine whether government officials are entitled to qualified immunity, we ask two questions: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Courts may address these two prongs in whichever order they choose. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Chappell v. City Of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

On appeal, Zberkot argues that his actions did not constitute a constitutional violation or violate clearly established law. He argues that based on the warrant and the DFAT investigation, "at the time it was reasonable to conclude that Plaintiff was the person identified in the warrant" and that Zberkot's arrest "was not an unreasonable seizure rising to the level of a civil rights violation." (Zberkot Br. at 11.) Zberkot argues that based on this "particular set of facts," "Zberkot did not violate clearly established law." (*Id*.)

There are two potential constitutional violations involved in this case: first, mistakenly arresting Seales instead of Siner when executing the arrest warrant for Siner and, second, mistakenly detaining Seales for fourteen days after the arrest.

### A.      Mistaken Arrest

We first consider whether Zberkot violated a clearly established constitutional right by mistakenly arresting Seales, when the person actually named in the warrant was Siner.  "Arrest warrants in the hands of a police officer, unless facially invalid, are presumed valid." *Fettes v. Hendershot*, 375 F. App'x. 528, 532 (6th Cir. 2010).  "[P]olice and correction employees may rely on facially valid arrest warrants even in the face of vehement claims of innocence by reason of mistaken identity or otherwise." *Masters v. Crouch*, 872 F.2d 1248, 1253 (6th Cir. 1989) (citing *Baker v. McCollan,* 443 U.S. 137, 145 (1979)); *Baker*, 443 U.S. at 145–46 ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence[.]").  Here, Seales does not challenge the facial validity of the warrant.  He does, however, argue that the officers unreasonably mistook Seales for Siner and their unreasonable mistake violates the Fourth Amendment.

"[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802 (1971) (internal citations and quotation marks omitted); *see also Fettes*, 375 F. App'x at 532 ("The Supreme Court has held that if, in executing a presumptively valid arrest warrant, the police reasonably mistake a second person as being the individual named in the warrant and arrest him, the arrest of the second person does not offend the Constitution."); *Ingram v. City of Columbus*, 185 F.3d 579, 595 (6th Cir. 1999) ("Where the

police have probable cause to arrest one party but reasonably mistake a second party for the first, their arrest of the second party is valid." (citing *Hill*, 401 U.S. at 801)).

In *Hill*, the police had probable cause to arrest Hill, the man named in the warrant, but mistakenly arrested a man with a completely different name—Miller. 401 U.S. at 802–03. Miller told the officers he was Miller, not Hill, but the officers arrested him anyway. *Id*. at 803. The Court found the mistake was reasonable because Miller generally matched Hill's description, was in Hill's home, answered Hill's door, and did not seem credible to police. *Id*. 803–04. That Miller produced identification did not make the arrest unreasonable because "aliases and false identifications are not uncommon." *Id*. at 803. The Court observed that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before [the Court] the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Id*. at 804.

In *Fettes*, an arrest warrant was intended for Robert Fettes, Jr., and was issued for "Robert Fettes." 375 F. App'x at 532. Robert Fettes, Sr. was arrested by mistake. *Id*. Fettes, Sr. protested to the police that the warrant was not for him, but he was held for about two hours before he was released. *Id*. Fettes argued that the officer should have done a better job verifying that the warrant was intended for Fettes, Jr. and not Fettes, Sr. *Id*. The Court found no constitutional violation. *Id*. at 532–33. By contrast, in *Ingram*, the Court found that a genuine issue of fact existed as to whether the officer's mistake was a reasonable one. 185 F.3d at 596. There, officers chased a man who tried to sell drugs to an undercover officer. *Id*. at 584. The suspect ran into someone else's house and hid under a bed. *Id*. Officers followed him into the house and arrested another man they found sleeping in the basement. *Id*. at 585. The Court found that there was a question of fact as to whether the officer's mistake was a reasonable one

because the plaintiff was found napping in his basement and "could not have been the same man who attempted to sell drugs to [an officer] and then outran several officers who were in 'hot pursuit'" and because the plaintiff did not look like the man the officers had been chasing. *Id*. at 596.

Courts from outside of this circuit similarly look to the totality of the circumstances surrounding the arrest to determine its reasonableness. *See Tibbs v. City of Chicago*, 469 F.3d 661, 664–65 (7th Cir. 2006) (finding the officer did not act unreasonably when he mistakenly arrested someone with the same first and last name, race, and sex, but different middle initial as the person listed in the warrant); *Rodriguez v. Farrell*, 280 F.3d 1341, 1347 (11th Cir. 2002) (finding a mistaken arrest reasonable where police arrested a man with the same name as the alias of another man listed in an arrest warrant and where the two also were the same sex, age, and race, were born in neighboring towns in the same state, even though the two had a five inch difference in height); *Hill v. Scott*, 349 F.3d 1068, 1073 (8th Cir. 2003) (finding it not an unreasonable mistake when officers arrested a man with a similar name because they had "remarkably similar descriptions"); *Patton v. Przybylski*, 822 F.2d 697, 699–700 (7th Cir. 1987) (finding no unreasonable mistake where police arrested a man with the same name and of the same race as the man listed in the arrest warrant, even though he had a driver's license from a different state that listed a different address and birthdate from that listed in the arrest warrant); *Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir. 1987) (finding the police officer did not act unreasonably when he mistakenly arrested someone whose name matched the suspect's alias and who had a similar birthday, was of the same race and sex, and lived in a similar geographic area); *Blackwell v. Barton*, 34 F.3d 298, 303–04 (5th Cir. 1994) (finding a mistaken arrest reasonable

because she was "of the same height and weight, sex, race, age, nickname, and at the location where he expected to find [her]," even though the two had different last names).

Turning to the specific facts of this case, on January 18, 2012, Zberkot was on assignment to DFAT. There was an outstanding arrest warrant for Rodrick Siner, who used the alias Marvin Seals. The warrant had been assigned to another Task Force officer. DFAT needed another officer to help apprehend Siner and so Zberkot assisted the apprehension at the location that had been developed.[1] The team went to the location developed for Siner and they executed the arrest warrant. Zberkot and the other members of DFAT "made contact with wanted subject" and arrested Seales at his place of work. (R. 80-4, Arrest Report, PageID # 658; R. 28, Amended Complaint, PageID # 123.) The officers told Seales that there was a warrant out for his arrest. Seales said that he was not Siner and they had the wrong individual. Seales was then transported to the police station and released to Zberkot for processing.

Even though Seales argues that Zberkot's mistake was unreasonable as Seales was arrested "for no other reason other than the similarity of his name to that of Siner's alias, 'Marvin Seals,'" (Seales Br. at 13, 17), Seales' identifying information was similar to Siner's in a number of respects. Seales had essentially the same name as Siner's alias,[2] was the same sex, same race, and the same age as Siner, and was working in the same geographic location in which Siner resided. Additionally, DFAT had previously developed the address for where the team could find Siner, and Zberkot found Seales at that address. Finally, because Zberkot believed he was arresting a man who used an alias, Zberkot would have expected Seales to lie about his name. Consequently, it was not unreasonable for Zberkot to mistakenly believe he was arresting Siner

---

[1] There is no evidence in the record providing how this location was developed or who developed it.

[2] The alias "Marvin Seals" is one-letter off from the name "Marvin Seales." This minor difference in spelling does not make Zberkot's mistake unreasonable in light of all the other circumstances.

when in fact he was arresting Seales. Thus, Seales has not established that Zberkot unreasonably mistook Seales for Siner and in doing so violated Seales' constitutional rights.

### B.     Continued Detention

We next consider whether Zberkot violated a clearly established right based on Seales' continued detention. This constitutional violation is "based on his continued incarceration even after Defendant Zberkot and Detroit employees should have known he was not the person named in the warrant." (R. 83, Opinion, PageID # 689.)

#### i.     Violation of a Constitutional Right

In *Baker*, the Supreme Court found that "one . . . could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." 443 U.S. at 144. "[D]epending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'" *Id.* at 145. Nonetheless, in *Baker*, the Supreme Court held that a detention for three days, from December 30, 1972 to January 2, 1973, was not a constitutional violation, despite the plaintiff's repeated protests of mistaken identity. *Id.* at 144–45.

While the Supreme Court has not since elaborated on *Baker* or the circumstances in which this kind of detention would implicate constitutional due process rights, the Sixth Circuit has. This Court held that "someone who is wrongly imprisoned as a result of mistaken identity can state a constitutional claim against his jailers based on their failure to ascertain that they had the wrong man." *Gray v. Cuyahoga Cty. Sheriff's Dep't*, 150 F.3d 579, 582 (6th Cir. 1998). To determine whether a constitutional violation has occurred, the "principal question" is whether the

officers "acted with something akin to deliberate indifference in failing to ascertain that the [person] they had in custody was not the person wanted . . . on the outstanding . . . warrant." *Id.* at 583. In answering this question, this Court has considered the following factors: (1) the length of time an individual was detained; (2) whether the individual protested his innocence; and, (3) whether any exculpatory evidence was available to officers at the time of arrest or detention. *See id.* at 582–83.

For example, in *Gray*, the Court found a genuine issue of material fact as to whether Gray's mistaken identity detention violated his constitutional rights, where he was imprisoned for forty-one days and where the defendant officers were in possession of a photograph of the suspect that "bore virtually no resemblance to Gray" and a physical description that did not match Gray. *Id.* The Court also noted that there was no evidence that the officers "conducted a reasonable inquiry into the discrepancy between the photograph and the real Gray." *Id.* at 583.

On the other hand, in *Flemister v. City of Detroit*, the Court found that a detention of four-and-a-half days was an insufficient period of time to amount to a constitutional violation, even though the plaintiff repeatedly protested his innocence and both photographs and fingerprints were available that would have cleared up the mistake. 358 F. App'x 616, 620 (6th Cir. 2009). Finally, in *Thurmond v. County of Wayne*, the Court found that a detention of thirty-five days did not violate the plaintiff's constitutional rights, where the plaintiff never protested his innocence and the deputies were not in possession of any potentially exculpatory evidence. 447 F. App'x 643, 649 (6th Cir. 2011).

From these cases, it is clear that officers act with "something akin to deliberate indifference" when they fail to verify the identity of the person they have in custody, despite knowledge or notice that the person in custody is not the one listed in the arrest warrant.

Protestations of innocence or misidentification and the availability and accessibility of exculpatory evidence are relevant considerations for deciding whether officers have notice that they need to conduct some sort of inquiry. The duration of confinement matters insofar as it allows officers opportunities for a reasonable inquiry.

Other circuits have likewise recognized this constitutional right to be free from continued detention after officers know or have notice that that the person in custody is not the one listed in the arrest warrant. *See Garcia v. Cty. of Riverside*, 817 F.3d 635, 641 (9th Cir. 2016) ("No person deserves to be incarcerated without good reason, and incarceration on a warrant without a reasonable investigation of identity, when the circumstances demand it, is subject to review under the Due Process Clause. The issue is whether LASD's treatment of Plaintiff's contention that he was not the warrant subject was so superficial, under the circumstances, that it ignored a duty to investigate and offended due process."); *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007) ("[W]e hold that the right mentioned in *Baker* . . . protected [the plaintiff] from a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence."); *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) ("[Plaintiff] had a liberty interest in being free from a twelve-day incarceration without any procedural safeguard in place to verify the warrant he was detained on was his and in the face of his repeated protests of innocence. In light of the importance of [plaintiff's] liberty interest, the significant risk of deprivation of that interest through the City's warrant procedures, and the minimum burden to the City of instituting readily available procedures for decreasing the risk of erroneous detention, the procedures afforded by the City to [plaintiff] failed to provide him due process under the Fourteenth Amendment"); *Lee v. City of Los Angeles*, 250 F.3d 668, 683–84 (9th Cir. 2001) (finding that plaintiff's allegations were sufficient to establish that defendant

officers violated plaintiff's "liberty interest in being free from incarceration" by "recklessly and with deliberate indifferent to [the plaintiff's] right to due process . . . fail[ing] to take any steps to identify him before arresting him . . . and causing his incarceration for two years"); *Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir. 1993)[3] (recognizing a "constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release").

In light of the case law, the question is whether the evidence, when viewed in the light most favorable to Seales, creates a genuine issue of material fact as to whether Zberkot "acted with something akin to deliberate indifference" in failing to ascertain that Seales was not the person identified in the warrant, where Seales was imprisoned for fourteen days, where officers were in possession of exculpatory evidence, and where Seales repeatedly protested his misidentification. We hold that it does.

Seales has alleged that he protested his innocence to Zberkot and his fellow deputies numerous times. This allegation finds some support in the record. *See Bays v. Montmorency Cty.*, 874 F.3d 264, 268 (6th Cir. 2017) ("In [making the qualified immunity determination], we assume the truth of all record-supported allegations by the non-movant." (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2017 (2014))). For example, Wayne County was asked whether Seales told "anyone in the Wayne County Jail that he was not Rodrick Siner and/or Marvin Seals or he was not the person for which there were an outstanding warrant by the DFAT[.]" (R. 75-7, Answer to Interrogatories, PageID # 575.) Wayne County responded that "Plaintiff filed a grievance on January 24, 2012," six days after his arrest, and attached a grievance log in which

---

[3] *Cannon* also cited to *Sivard v. Pulaski County,* 959 F.2d 662 (7th Cir.1992) for the proposition that "continued detention where sheriff knew it was wrongful states claim under § 1983 for due process violation" and to *Sanders v. English,* 950 F.2d 1152 (5th Cir. 1992) for the proposition that "failure to release after officer knew or should have known that plaintiff had been misidentified gives rise to cause of action under § 1983." 1 F.3d at 1563.

the reason for the grievance is listed as "Wrong b[oo]king name." (*Id.* at # 575, 579.) Wayne

County did not produce the actual grievance because "despite a diligent search, [it] was unable to

locate the original grievance." (*Id.* at # 575.) Seales' deposition transcript also supports his

allegation that he protested his misidentification. He said "I kept telling everyone I'm not

Roderick Siner. . . . It's not me."[4] (R. 70-3, Seales Depo., PageID # 379, 24:24–25:9). In sum,

there is evidence indicating that Seales protested his innocence multiple times and claimed he

had been misidentified.

Next, the record shows that significant exculpatory evidence existed and it was in the

possession of police. Seales alleges that at the time of his arrest and incarceration, a mug shot

and "further identification" of Siner were available to officers. (R. 28, Amended Complaint,

PageID # 125.) The photos show two men who look nothing alike. There is also some evidence

that recorded fingerprints for Siner were available to the officers. Finally, officers would have

possessed the information contained in Siner's arrest warrant. For example, the Detroit Police

Department Arrest Report includes Siner's age, date of birth, height, weight, and home address.

Though it does not appear we have evidence of Seales' height or weight, we know that Seales

was born on a different date and presumably lived at a different address.

Although there is record evidence that Seales continuously protested the misidentification

and that exculpatory evidence was readily available, there is no evidence that the officers made

any attempt to verify Seales' identity. For instance, nothing suggests that officers checked

---

[4] We note that only a portion of Seales' deposition transcript made it into the record. The final question on the pages provided—"when you were first taken, arrested and taken to the precinct, did you ask the arresting officers why you were there, have any . . ."—also likely elicited testimony from Seales about protesting his innocence during his arrest and initial detainment. (R. 70-3, Seales Depo., PageID # 383, 41:23–25.) Additionally, Seales' counsel represented at oral argument that Seales testified that he protested his misidentification to Zberkot and other officers during his arrest on other missing pages of the deposition transcript. Unfortunately, those pages are not in the record.

Seales' fingerprints, photographs, or biographical information against the information that they had on Siner. It appears that the officers failed to confirm Seales' identity, even though simple identification procedures would have revealed the mistake.

In all, we think these facts taken together would permit a reasonable trier of fact to find that Seales' constitutional rights were violated.

### ii. Clearly Established

The next step in the qualified immunity analysis is to decide whether the right was clearly established. We hold that it was.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted). An official "can still be on notice that [his] conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). To determine whether a constitutional right is clearly established, we "look [ ] first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Bell v. Johnson,* 308 F.3d 594, 602 (6th Cir. 2002) (quoting *Chappel v. Montgomery Fire Prot. Dist. No. 1,* 131 F.3d 564, 579 (6th Cir. 1997)). Further, "an action's unlawfulness can be apparent from direct holdings, from specific

examples described as prohibited, or from the general reasoning that a court employs." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (citing *Hope*, 536 U.S. at 730).

The Supreme Court long ago recognized that after a certain amount of time, continued detention in the face of repeated protests deprives the accused of liberty without due process. *Baker*, 443 U.S. at 145. Since then, this Court has laid out the "principal question" for determining whether a constitutional violation has occurred—have the defendants "acted with something akin to deliberate indifference in failing to ascertain that the [person] they had in custody was not the person wanted by the Michigan authorities on the outstanding . . . warrant[?]" *Gray*, 150 F.3d at 583. The Court has also set forth three factors courts should examine to determine whether a detention violates due process—(1) the length of time an individual is detained, (2) whether the detainee protested his or her innocence, and (3) whether potentially exculpatory evidence was available to officers at the time of arrest and detention. *See Gray*, 150 F.3d at 582–83; *Thurmond*, 447 F. App'x at 649; *Flemister*, 358 F. App'x at 620.

On top of clearly laying out the standards for determining whether a constitutional violation has occurred, some courts in this circuit have addressed time periods similar to those in this case. For example, *Gray* expressly relied on the findings of two district courts, which held, following *Baker*, that two imprisonments lasting thirty days and twelve days constituted constitutional violations. 150 F.3d at 582. Additionally, in *Cleveland v. City of Detroit*, the court denied summary judgment to officer defendants after the plaintiff "spen[t] two weeks in jail," when there was evidence in the record that the officers were aware of the plaintiff's mistaken identity claim and the officers "had the ability to resolve it with the information then available to them." 275 F. Supp. 2d 832, 838, 840 (E.D. Mich. 2003).

Several other circuits to have expounded on this issue have held that similar conduct constitutes a violation of a clearly established right. *See Russo v. City of Bridgeport*, 479 F.3d 196, 208, 211 (2d Cir. 2007) (finding that the plaintiff had a clearly established right, which protected him "from a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence"); *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (finding that the plaintiff "had a liberty interest in being free from a twelve-day incarceration without any procedural safeguard in place to verify the warrant he was detained on was his and in the face of his repeated protests of innocence"); *Cannon v. Macon Cty.*, 1 F.3d 1558, 1561, 1563–64 (11th Cir. 1993) (finding that a jury could find the officer acted with deliberate indifference to the plaintiff's clearly established due process right where she was detained for seven days and the officer did not attempt to verify that she was the person wanted and exculpatory information existed).

In light of these cases, we find Seales had a clearly established constitutional right to be free from continued detention after officers should have known that he was not the person named in the warrant. Accordingly, we find the district court correctly determined that Zberkot was not entitled to qualified immunity. It is for the trier of fact to decide whether Zberkot violated Seales' constitutional rights.

## II.     Immunity under Michigan Law

### Standard of Review

"[T]his Court reviews a district court's denial of summary judgment *de novo*." *Harrison*, 539 F.3d at 516 (citing *Monette,* 90 F.3d at 1176). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**Analysis**

"An employee of a governmental agency acting within the scope of his or her authority is immune from tort liability unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury." *Kendricks v. Rehfield*, 716 N.W.2d 623, 625 (Mich. Ct. App. 2006) (citing MICH. COMP. LAWS § 691.1407(2)). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(8)(a).

Under Michigan law, courts look to whether:

(a) the individual was acting or reasonably believed that he was acting within the scope of his authority,
(b) the governmental agency was engaged in the exercise or discharge of a governmental function, and
(c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

*Odom v. Wayne Cty.*, 760 N.W.2d 217, 228 (Mich. 2008). The dispute in the instant case is over the third prong—whether Zberkot's conduct was grossly negligent. "[Gross negligence] has been characterized as a willful disregard of safety measures and a singular disregard for substantial risks." *Oliver v. Smith*, 810 N.W.2d 57, 62 (Mich. Ct. App. 2010) (citing *Tarlea v. Crabtree*, 687 N.W.2d 333, 339 (Mich. Ct. App. 2004)). "It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea*, 687 N.W.2d at 339–40.

"[T]he burden is upon a plaintiff to plead facts in avoidance of immunity." *Michonski v. City of Detroit*, 413 N.W.2d 438, 441 (Mich. Ct. App. 1987) (citing *Furness v. Public Service Comm.,* 299 N.W.2d 35 (Mich. Ct. App. 1980)). "Summary disposition is precluded where reasonable jurors honestly could have reached different conclusions with respect to whether a

defendant's conduct amounted to gross negligence." *Stanton v. City of Battle Creek,* 603 N.W.2d 285, 289 (Mich. Ct. App. 1999), *aff'd*, 647 N.W.2d 508 (Mich. 2002). On the other hand, if "on the basis of the evidence presented, reasonable jurors could not differ with respect to whether a defendant was grossly negligent, summary disposition should be granted." *Id*.

The district court concluded that "it is not appropriate to grant Defendant Zberkot immunity at the summary judgment stage, when reasonable jurors could find that Zberkot's conduct amounted to gross negligence." (R. 83, Opinion, PageID # 703.) Zberkot argues that the district court erred because "there is no evidence that the actions of Defendant Zberkot were so reckless as to demonstrate a substantial lack of concern for whether an injury results." (Zberkot Br. at 13.) Zberkot appears to argue that this is because the warrant and "information supplied by DFAT" demonstrated that "Plaintiff was the proper person to be arrested." (*Id.*)

In coming to its conclusion, the district court relied on *Kendricks*. In *Kendricks*, the plaintiff was incarcerated for seven months, despite protestations of innocence claiming that his twin brother was the person they sought and the existence of exculpatory photographic and fingerprint evidence. 716 N.W.2d at 682–83. The Michigan court found that "reasonable jurors could reach the conclusion that defendants were grossly negligent" and so "[t]he question of whether the officers' conduct demonstrated a sufficient lack of concern to constitute gross negligence is a question for a trier of fact." *Id*. at 683.

Zberkot distinguishes this case from *Kendricks*. He notes that the opinion admits that "[w]e agree that the mistake was reasonable at the point of arrest, and might be inclined to agree that a delay of a day or even several days before investigating plaintiff's claim of mistaken identity could have been reasonable under these circumstances." *Kendricks*, 716 N.W.2d at 682.

The court said, however, "we cannot agree that holding plaintiff without investigating the claim for *seven months* was even remotely reasonable." *Id*. (emphasis in original).

Even with this distinction in mind, we find that there is still "sufficient indicia of gross negligence to create a genuine issue of material fact." *Id*. Because of Zberkot's alleged role in denying Seales his constitutional right, as discussed above, we believe that reasonable jurors could reach the conclusion that Zberkot was grossly negligent. Consequently, Zberkot is not entitled to governmental immunity and the district court correctly denied Zberkot's motion for summary judgment on this claim.

## III.    FALSE ARREST AND FALSE IMPRISONMENT CLAIM

"This court does not normally address issues raised for the first time on appeal." *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1072 (6th Cir. 1993) (citations omitted).

> Propounding new arguments on appeal in attempting to prompt us to reverse the trial court—arguments never considered by the trial court—is not only somewhat devious, it undermines important judicial values. . . .  In order to preserve the integrity of the appellate structure, we should not be considered a "second shot" forum, a forum where secondary, back-up theories may be minted for the first time.

*Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 396 n.3 (6th Cir. 1999) (quoting *Estate of Quirk v. C.I.R.,* 928 F.2d 751, 758 (6th Cir. 1991)).

The Court adheres to this rule except in "'exceptional cases or particular circumstances' or when the rule would produce 'a plain miscarriage of justice.'" *Elkins*, 8 F.3d at 1072 (quoting *Pinney Dock and Transp. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1461 (6th Cir. 1988)).

In his motion for summary judgment, Zberkot argued that he was entitled to immunity on Seales' gross negligence claim, but he did not argue that he was immune from liability with respect to the false arrest and/or false imprisonment claim. On appeal, however, Zberkot argues

that he is still entitled to immunity on this claim because in his motion for summary judgment he argued that "he was immune from liability as to intentional tort claims," which "applies to the claims of false arrest and imprisonment." (Zberkot Br. at 15.) More specifically, in his motion for summary judgment, Zberkot says, "Plaintiffs allegations of intentional tort, under the factual circumstances, were also not sufficient to remove the individual Defendant's immunity because Plaintiff failed to plead or prove facts which amounted to gross negligence as required under the governmental immunity act." (R. 74, Motion, PageID # 504.) Even though Zberkot uses the phrase "intentional tort," he does not argue that he should be shielded by immunity for Seales' false arrest and false imprisonment claim. The section header and the sentence itself only reference gross negligence, or Count III in Seales' amended complaint. Additionally, the statute Zberkot cites in support of his argument (MCL 691.1407.(2)(C)) refers only to gross negligence, and the case law he cites involve claims of gross negligence. Nowhere in the two pages dedicated to this argument does Zberkot discuss immunity with regard to the false arrest and/or imprisonment claim. He exclusively discusses immunity as to the gross negligence claim. Therefore, because this argument for immunity on the false arrest and/or false imprisonment claim was not presented to the district court, it is not properly before this Court.

Even on appeal, Zberkot's brief barely makes the argument that he is entitled to immunity under Michigan law. Zberkot spends approximately two sentences on this issue. In the first sentence he describes a Michigan case where the Michigan Court of Appeals found a detective was immune to a claim of false imprisonment. In the second sentence, Zberkot makes the conclusory assertion that "[s]imilarly in our case, there is no evidence of any malicious intent on the part of Officer Zberkot." (Zberkot Br. at 15.) Thus, not only did Zberkot not argue that

he was entitled to immunity on this specific claim in his motion for summary judgment before the district court, but he hardly makes this argument on appeal either.

We do not believe this case presents the kind of exceptional circumstances that would "warrant disregarding the general rule." *Elkins*, 8 F.3d at 1072; s*ee also Harris v. TD Ameritrade, Inc.*, 805 F.3d 664, 667–68 (6th Cir. 2015) (declining to review a claim when it was raised for the first time in an appellate brief and when the argument contained in the brief was not "presented with sufficient clarity and completeness for [the Court] to resolve").

Consequently, Zberkot cannot argue on appeal that this Court should reverse the district court's denial of summary judgment with regard to the claim of false arrest/imprisonment based on immunity because Zberkot did not raise this claim before the district court and does not sufficiently present the argument before this Court.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.