## SMITH *v.* TOLAN.

Malicious Prosecution — Advice of Prosecuting Attorney — Good Faith—Probable Cause.

A member of the common council who makes a criminal complaint against another member of the council, for corrupt conduct, upon the advice of the prosecuting attorney, is not liable in an action for malicious prosecution, in the absence of evidence that he acted in bad faith or that the statement to the prosecutor was unfair.[1]

Error to Delta; Stone, J.   Submitted January 6, 1909. (Docket No. 8.)   Decided September 21, 1909.

[1] On the question of advice of counsel as defense to an action for malicious prosecution, see note to *Van Meter* v. *Bass* (Colo.), 18 L. R. A. (N. S.) 49.

Case by Edward Smith against John Tolan for malicious prosecution. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*John Power*, for appellant.

*Gallup & Gallup*, for appellee.

MCALVAY, J. Plaintiff recovered a judgment against defendant in an action for malicious prosecution. A motion for a new trial duly made by defendant was denied. A bill of exceptions was settled, and the case is here for review upon a writ of error. These parties were members of the council of the city of Escanaba in Delta county in the years 1904–1906, during which time bids were invited by the council, and contracts were let, for street improvements. The firm of Fleming & Sullivan, being lowest bidders, were awarded a contract in August, 1904. Smith and Tolan took opposite sides upon the awarding of this contract, Smith favoring it, and Tolan objecting on account of doubt as to reliability of the bidders, Fleming & Sullivan. Mr. Sullivan of this firm died early in 1905, and John G. Zane, who was city engineer in 1904 and until April, 1905, secured his interest in this contract, and thereafter worked with Fleming in performing it. On August 11, 1904, Joseph A. Gross, owner of a stone quarry, entered into a contract in writing with Joseph Fleming, of the firm of Fleming & Sullivan, to furnish sufficient crushed stone for the above contract at 70 cents per cubic yard f. o. b. at Escanaba, in which the paving contract was referred to, and the sureties thereon were not to be held for such stone furnished. On March 3, 1905, plaintiff Smith, then a member of the council, entered secretly into a contract in writing with said Gross for the entire output of crushed stone during 1905 and 1906, or so much as Smith might desire and order at 85 cents per cubic yard f. o..b. cars at Escanaba, and for the balance of contract let by the city in 1904 80 cents per cubic yard. Smith made a contract

similar in all respects with John Bichler, another quarry owner in the same vicinity. These contracts for stone made with Smith were assigned by him to Zane May 3, 1905. No other stone suitable for street work was obtainable near Escanaba. The fact that these contracts had been so made and assigned was kept a secret by Smith and Zane from the city council and officers and from the public until about April, 1906. In the summer of 1905, a dispute having arisen between Gross and Fleming and Zane as to whether Gross should continue to furnish stone at the price fixed by the Sullivan contract, Smith voluntarily agreed to pay an advanced price therefor of 10 cents per cubic yard over the Sullivan contract. Such amount of this stone as the subcontractors required was sold to them by Fleming and Zane at $1.05 per cubic yard.

Early in 1906 the fact of the Gross contract with Smith became known through the press, and there were rumors of dishonesty in connection therewith and with the street improvement. Investigation was started, and defendant Tolan became active in that direction. He consulted the prosecuting attorney on several occasions relative to the charges against Smith, and was informed by him that, to make a case, it would be necessary to offer proof that Smith had received money or other valuable consideration in connection with the stone contracts. Later, acting upon such advice, he brought a witness to the prosecutor, who stated that Smith told him that he (Smith) had made money out of the contract for stone which went into the street paving. This witness also so testified upon the trial. Tolan testified that he then said to the prosecutor: "Well, if you think there is a cause for action, I will make the complaint." The prosecutor replied, "All right, you go ahead," and told him to be at a certain justice's office at 2 o'clock, and he would meet him there. The prosecutor required the time because the complaint was a difficult one to draw, and read it to him at the time and place designated and presented it to him to sign, and he signed it. He also testified that he told the prosecutor

all the facts within his knowledge concerning this matter before making the complaint. On this complaint a warrant issued. Smith was arrested, an examination was had, and he was bound over for trial, the prosecutor also so advising. A trial was had in the circuit court, and a verdict of not guilty was rendered. The complaining witness, Tolan, was not present or called as a witness at said examination, but he was present at the trial, and was a witness for the people. Out of this criminal proceeding against the plaintiff, Smith, the case at bar arose.

Defendant insists that the record shows that there was probable cause for making this complaint; that it was made after defendant had stated, in good faith, fully and fairly, all of the facts within his knowledge to the prosecuting officer, and relied and acted upon his advice, and assigns error upon the refusal of the court to instruct the jury:

" That it appeared from the evidence that defendant had probable cause for making the criminal complaint, and your verdict should be for defendant."

The record shows that the prosecutor was familiar with this case. He had published a statement concerning it in the public press. He advised publicly that, to make a case, it must appear that Smith received benefit from the stone contracts. He so informed Tolan, and did not advise making the complaint until after Tolan brought to his knowledge such proof. He testified on direct examination as a witness for plaintiff:

"*Q.* You were familiar with all the facts as they were claimed at that time, and as they subsequently developed?
"*A.* Oh, yes; I knew all about the case and facts, and talked the matter over with Tolan."

It is claimed that the record does not disclose what facts Tolan stated to the prosecutor. The substance of his testimony is already given. It appears in the record in narrative form. No objection was made to it, nor cross-examination had upon it. It is uncontradicted that Tolan,

after several interviews with the prosecutor, made inquiry in regard to the only question of fact of which the prosecutor had no information, and fully stated to the prosecutor what the result was, and produced the witness who gave him the information. This is confirmed by the prosecutor.

The action of the prosecuting attorney at the time, in entertaining and drawing the complaint, and in advising the justice to hold Smith for trial, cannot be consistently construed other than that, from Tolan's statement and the evidence of a witness furnished by him, he advised Tolan to make the complaint. Tolan was a member of the common council. It was his duty as a public officer to investigate these charges which had been made, and proper for him to place what information he obtained before the prosecuting officer of the county. We do not find any evidence in this record that he did not act in good faith. It is the settled law in this State in actions for malicious prosecution and false imprisonment that, where a prosecuting witness has in good faith fully and fairly stated all of the material facts within his knowledge to the prosecuting officer and acted upon his advice, proof of the fact establishes a case of probable cause. *Rogers* v. *Olds,* 117 Mich. 370 (75 N. W. 933); *Doty* v. *Hurd,* 124 Mich. 671 (83 N. W. 632), and cases cited. Also Cooley on Torts, p. 187. The court was in error in refusing to charge as requested.

Errors assigned upon the introduction of evidence and certain portions of the charge of the court, in view of our conclusion, need not be discussed.

The judgment is reversed, and a new trial ordered.

BLAIR, C. J., and GRANT, HOOKER, and MOORE, JJ., concurred.