## FLONES v DALMAN

Docket No. 129641. Submitted January 7, 1993, at Lansing. Decided
April 19, 1993, at 9:35 A.M.

Gary L. and Pamela S. Flones brought an action in the Ingham
Circuit Court against Larry Dalman, a trooper with the Michi-
gan State Police, and his supervisors, Lieutenant Richard Jar-
man and Sergeant John Boggs, seeking damages arising out of
the arrest of Gary Flones for gross indecency. The plaintiffs
alleged that Dalman's misidentification of Gary as a person
observed engaging in an act of gross indecency during police
surveillance of a highway rest area and Gary's subsequent
arrest were the result of Dalman's failure to investigate and
act upon information supplied to him indicating that the car
observed in the rest area was being used by Pamela's brother.
The trial court, Carolyn Stell, J., granted summary disposition
for defendants Jarman and Boggs on the basis of governmental
immunity, but denied summary disposition for defendant Dal-
man on that basis because there existed a question of fact
regarding whether he was acting in good faith. The case
against Dalman went to the jury on theories of negligence,
false arrest and imprisonment, malicious prosecution, and loss
of consortium, and the jury returned a general verdict of
$375,000 for Gary, but found no damages for Pamela's claim of
loss of consortium. The trial court denied Dalman's motions for
judgment notwithstanding the verdict and for a new trial and
plaintiffs' motions for additur and for a new trial regarding
damages for loss of consortium. Dalman appealed, and the
plaintiffs cross appealed.

The Court of Appeals *held:*

1. Bad faith such as will defeat a claim of governmental
immunity by a lower level government employee can be estab-

REFERENCES

Am Jur 2d, False Imprisonment §§ 7, 80, 85; Malicious Prosecution
§ 141; Municipal, County, School, and State Tort Liability §§ 128,
456, 463.

See ALR Index under False Imprisonment and Arrest; Malice;
Malicious Prosecution; Municipal Corporations; Police and Law
Enforcement Officers; Probable Cause; Governmental Immunity
or Privilege.

lished by showing that the employee acted with deliberate indifference to the effects of the employee's actions. Because there was evidence from which the jury could find that Dalman acted with deliberate indifference during his investigation, there was sufficient evidence from which the jury could conclude that Dalman acted in bad faith and could not avail himself of the defense of governmental immunity.

2. It was error to submit plaintiffs' theory of negligent investigation to the jury inasmuch as such a claim cannot exist in the absence of a special relationship between a member of the public and a police officer. A police officer's duty to investigate crime does not extend to individual members of the public. However, because the claim of negligent investigation had elements that overlapped with plaintiffs' other theories of recovery, because the jury specifically found liability regarding each of the theories, and, because the award of damages was in a single lump sum, submission of the theory of negligent investigation to the jury does not require reversal.

3. Dalman is not relieved of liability for false arrest and imprisonment by the fact that the arrest was made pursuant to an arrest warrant in view of the fact that there was evidence that he failed to investigate and disclose to the magistrate exculpatory information that might have affected the magistrate's determination of the existence of probable cause.

4. The question of the presence or absence of probable cause is a question of fact for the jury. Accordingly, because malice can be inferred from a lack of probable cause, there was a sufficient basis from which the jury could find malicious prosecution.

5. The record supports the jury's determination not to award damages for loss of consortium. The trial court did not abuse its discretion by denying the motions for additur and for a new trial regarding damages for loss of consortium.

6. There was no disputed issue of fact that bore on the question whether defendants Jarman and Boggs were entitled to governmental immunity, and there is no intentional tort exception to governmental immunity. Accordingly, the trial court did not err in granting summary disposition for Jarman and Boggs.

Affirmed.

1. GOVERNMENTAL IMMUNITY — GOVERNMENT EMPLOYEES — BAD FAITH.

Bad faith such as will defeat a claim of immunity from tort liability by a lower level government employee with respect to

a claim arising before July 1, 1986, does not require proof of actual malice; such bad faith may be established by showing deliberate indifference to the effects of the employee's actions (MCL 691.1407; MSA 3.996[107]).

2. NEGLIGENCE — NEGLIGENT INVESTIGATION — POLICE OFFICERS — DUTY.

An individual may not bring an action against a police officer for negligent investigation in the absence of a special relationship with the officer because a police officer's duty to detect and investigate crime is owed to the public at large, not to individual members of society.

3. FALSE IMPRISONMENT — FALSE ARREST — POLICE OFFICERS — WARRANTS.

A police officer who executes a warrant that is valid on its face is protected from liability for false arrest and imprisonment unless, in securing the warrant, the officer fails to investigate or disclose to the magistrate exculpatory information that might tend to defeat a finding of probable cause.

4. MALICIOUS PROSECUTION — MALICE.

The malice element of the tort of malicious prosecution may be inferred from a lack of probable cause.

*Gray, Sowle & Iacco, P.C.* (by *Donald N. Sowle* and *Loren E. Gray*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Stewart H. Freeman* and *Thomas R. Wheeker,* Assistant Attorneys General, for the defendant.

Before: MURPHY, P.J., and MICHAEL J. KELLY and WAHLS, JJ.

WAHLS, J. In this tort action, defendant Larry Dalman appeals as of right the order of the Ingham Circuit Court that denied his motions for judgment notwithstanding the verdict and for a new trial. Plaintiffs have cross appealed the order that denied their motion for additur and the order that granted summary disposition in favor of defendants Richard Jarman and John Boggs.

In 1985 and 1986, the Michigan State Police received complaints of homosexual activity at highway rest areas around Lansing. State Police Lieutenant Jarman assigned Sergeant Boggs to investigate. Attention soon focused on the Holt rest area, where surveillance cameras were installed pursuant to a search warrant.

On March 8, 1986, Dalman, a state trooper, was on duty in an unmarked van parked at the rest area. He observed a blue 1984 Ford Escort enter the parking lot and pull alongside a pickup truck. After twenty minutes, the Escort moved and parked alongside Dalman's van. Ten minutes later, Dalman observed the driver leave the Escort and enter the monitored rest room, where he observed the driver, now known as subject S-53, engage in an act of gross indecency with subject S-54. S-53 appeared to be bearded and balding, wearing a baseball cap and casual jacket. S-53 then left the rest room and drove off. The Law Enforcement Information Network showed that the Escort's owner was "Pamela Fox."

At trial, plaintiff Pamela Flones, nee Fox, testified that she had loaned the Escort to her brother Jonathan Fox from March 7 to March 9. According to Pamela, Dalman came to her house at 11:30 P.M. on March 9 and told her that he was investigating a hit-and-run accident involving her automobile, which he said was driven by a bearded man in a baseball cap. She told Dalman that her brother Jonathan was the driver and gave Dalman his address and description, although she could not recall where he worked or the year of his birth. She also told Dalman that her husband, plaintiff Gary Flones, could possibly fit the description of the alleged hit-and-run driver. Dalman gave Pamela his business card and asked her to give it to Jonathan so Jonathan could contact him.

Pamela gave Jonathan the card, but Jonathan never called Dalman.

Four days later, Dalman returned to plaintiffs' house after 11:00 P.M. Both plaintiffs awoke and came to the door. Dalman observed Gary as he stood behind Pamela in the doorway. A brief conversation ensued, during which Dalman kept staring at Gary. Pamela told Dalman that she had given his card to Jonathan earlier that day. Dalman made no inquiries regarding Jonathan and soon left.

On the basis of his observations of subject S-53 at the rest area and of Gary at home, Dalman concluded that Gary Flones was S-53. Dalman informed Sergeant Boggs, who obtained an arrest warrant. On March 18, 1986, Gary was arrested at work as part of a large roundup of suspects in the rest area criminal activity. Amidst intense media coverage, Gary was booked at a National Guard Armory along with forty other suspects.

Pamela and her father went to the Lansing State Police Post and attempted to explain the situation to Lieutenant Jarman. Jarman instructed Detective Sergeant Brooks to investigate, who soon concluded that Jonathan Fox was subject S-53, not Gary Flones. Fox's roommate and a neighbor of plaintiffs viewed the rest area videotape and identified S-53 as Fox. After Brooks' investigation, charges against Gary were dismissed by the prosecutor.

Plaintiffs' case went to trial against Dalman on theories of negligence, false arrest and imprisonment, malicious prosecution, and loss of consortium. Defendants Jarman and Boggs had been granted summary disposition on the ground of immunity before trial. The trial court denied the same to Dalman because of a question of fact regarding his good faith. The jury found in favor

of plaintiffs with regard to each theory and entered a general damage award of $375,000 for Gary's injuries and zero for Pamela's consortium claim. The parties' posttrial motions were thereafter denied.

On appeal, Dalman first claims that plaintiffs' proofs failed to show that he was not immune from tort liability under *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984).[1] Specifically, Dalman claims that no evidence was presented from which the jury could conclude that he acted in bad faith. Dalman concludes that this alleged lack of proof compels the conclusion that he is immune from liability. We disagree.

According to *Ross,* lower level employees are immune from tort liability when they are (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority, (2) are acting in good faith, and (3) are performing discretionary acts. *Id.,* pp 633-634. A plaintiff can establish bad faith by showing malicious or intentionally unlawful conduct. *Gillam v Lloyd,* 172 Mich App 563, 577; 432 NW2d 356 (1988). Whether a tortfeasor acted in good faith is a question of fact that is generally left to the jury. *Id.* On appeal, we will view the evidence in a light most favorable to the plaintiff and give the plaintiff the benefit of every reasonable inference. If, after viewing the evidence, reasonable people could differ with regard to a tort-feasor's good or bad faith, the question should be left to the jury. *Boggerty v Wilson,* 160 Mich App 514, 522; 408 NW2d 809 (1987).

[1] Because plaintiffs' claim arose before July 1, 1986, the *Ross* test for individual immunity applies, rather than the amended immunity statute, MCL 691.1407; MSA 3.996(107). *Abraham v Jackson,* 189 Mich App 367, 369-370; 473 NW2d 699 (1991).

Dalman argues that "bad faith" for the purpose of immunity should be something more than the malice required to establish a claim of malicious prosecution. He argues that "actual malice" is required, i.e., that he acted corruptly, dishonestly, or with a motive other than that of performing his duty. We find this proposed definition to be too narrow. For example, the "deliberate indifference" standard of conduct necessary for liability under 42 USC 1983 has been held to be equivalent to bad faith under *Ross.* See *Tobias v Phelps,* 144 Mich App 272, 282; 375 NW2d 365 (1985). In this case, plaintiffs' proofs tended to show that Dalman deliberately ignored exculpatory evidence produced during his investigation of subject S-53. A jury could infer that Dalman was deliberately indifferent to Gary's liberty interest. We conclude that plaintiffs presented sufficient evidence of bad faith to avoid the bar of immunity.

Dalman next argues that Michigan does not recognize a cause of action for what he characterizes as plaintiffs' theory of "negligent investigation." We agree that plaintiffs' negligence claim should not have gone to the jury. Dalman raised this issue in his motion for a directed verdict and in his posttrial motions. The trial court appeared to believe that the expert testimony presented by plaintiffs regarding the appropriate standard of care for police officers established a duty. This holding, however, begs the question whether a duty exists, because the standard of care in a negligence action pertains to whether a duty has been breached, not to whether a duty exits. *Moning v Alfono,* 400 Mich 425, 436-437; 254 NW2d 759 (1977). Likewise, plaintiffs' appellate reliance on the evidence they presented regarding the appropriate standard of care is misplaced.

There can be no negligence absent a duty, and a

plaintiff has the burden of showing a duty owed by a defendant to the plaintiff. The question of duty is an issue of law for the court to decide. *Moning, supra,* p 437. Whether the law will impose a duty depends upon the relationship between the actor and the injured party. *Moning, supra,* pp 438-439; *Horn v Arco Petroleum Co,* 170 Mich App 390, 392; 427 NW2d 582 (1988).

A police officer's duty to preserve the peace is owed to the public at large, not to any one individual. *Eichhorn v Lamphere School Dist,* 166 Mich App 527, 545; 421 NW2d 230 (1988); *Simonds v Tibbitts,* 165 Mich App 480, 483; 419 NW2d 5 (1987). Here, defendant's duty to the public is to detect and investigate crime; no duty is owed to plaintiffs as individuals.[2] Without a duty, there can be no negligence. This conclusion is supported by policy:

> The law supports the use of litigation as a social means for resolving disputes, and it encourages honest citizens to bring criminals to justice. Consequently the accuser must be given a large degree of freedom to make mistakes and misjudgments without being subjected to liability. [Prosser & Keeton, Torts (5th ed), § 119, p 871.][3]

---

[2] A public official's duty may be owed to an individual where a special relationship exists between the official and the individual. Plaintiffs in the present case do not argue that a special relationship existed.

[3] Our research found one case remarkably similar to this one, *Boose v City of Rochester,* 71 AD2d 59; 421 NYS2d 740 (1979). In *Boose,* the plaintiff was indicted after she was misidentified as the perpetrator of an assault and obstruction. The plaintiff later brought an action for negligence, false arrest, false imprisonment, and malicious prosecution. With regard to the claim of negligence, the court stated:

> At the root of the case is plaintiff's right to damages, by whatever legal theory, for injury occasioned to her because of the alleged inadequate investigation by the police into the identity of a criminal defendant before obtaining a warrant and making an arrest. The jury in this trial was asked to decide in

Plaintiffs' remedy lies elsewhere.

Dalman next argues that because Gary was arrested pursuant to a warrant that was valid on its face, there can be no claim for false arrest or false imprisonment. Dalman claims that this is true irrespective of the presence or absence of probable cause for arrest. While an officer who merely executes a warrant that is valid on its face is protected from liability, *Belt v Ritter,* 18 Mich App 495, 499; 171 NW2d 581 (1969), aff'd 385 Mich 402; 189 NW2d 221 (1971), this case does not present that situation. Although Dalman took no part in the arrest, he informed Sergeant Boggs that S-53 was Gary Flones, and that information became the basis for the issuance of a warrant for the arrest of Gary Flones. Dalman did not investigate plaintiffs' exculpatory explanation or mention it to Sergeant Boggs. Immunity from liability for an arrest made pursuant to a warrant is grounded on the existence of probable cause, evidenced by a warrant. In the present case, the exculpatory information in Dalman's possession, had it been made known to the issuing magistrate, would tend to defeat probable cause. A police officer is not shielded from liability by a warrant where, because of the officer's failure to investigate or disclose exculpatory information, probable cause for the issuance of the warrant may have been lacking.

It is the settled law in this State in actions for

essence, whether the police had been negligent in their preparation of plaintiff's assault case. Plaintiff may not recover under broad general principles of negligence, however, but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution. Her right to be free of restraint or unjustified and unreasonable litigation is limited by the obvious policy of the law to encourage proceedings against those who are apparently guilty of criminal conduct and to let finished litigation remain undisturbed and unchallenged. [*Id.,* p 62.]

> malicious prosecution and false imprisonment
> that, where a prosecuting witness has in good faith
> *fully and fairly stated all of the material facts
> within his knowledge* to the prosecuting officer and
> acted upon his advice, proof of the fact establishes
> a case of probable cause. [*Smith v Tolan*, 158 Mich
> 89, 93; 122 NW 513 (1909). Emphasis added.]

See also *Gooch v Wachowiak*, 352 Mich 347, 351; 89 NW2d 496 (1958); *Doak v Springstead*, 284 Mich 459, 461; 279 NW 898 (1938); anno: *Liability of police or peace officers for false arrest, imprisonment, or malicious prosecution as affected by claim of suppression, failure to disclose, or failure to investigate exculpatory evidence*, 81 ALR4th 1031, 1044-1056, §§ 5-7. We conclude that reversal is not required on this claim.

Finally, Dalman argues that plaintiffs did not meet their burden of showing the malice element of the tort of malicious prosecution. We disagree. Viewed in a light most favorable to plaintiffs, their evidence was sufficient. "Malice" is not susceptible to any simple definition. Malice, however, may be inferred from a lack of probable cause. 1 Cooley, Torts (4th ed), § 119, p 405; *Renda v Int'l Union, UAW*, 366 Mich 58, 97-100; 114 NW2d 343 (1962); *Belt, supra,* p 503. In the present case, because facts supporting the presence or absence of probable cause were in dispute, the question of probable cause was put to the jury. See, e.g., *Sanders v Westin Hotel, Inc,* 172 Mich App 161, 165-166; 431 NW2d 414 (1988). The jury concluded that probable cause was lacking, and was permitted to infer malice from that conclusion. See *Rivers v Ex-Cell-O Corp,* 100 Mich App 824, 835; 300 NW2d 420 (1980).

The remaining question is whether reversal of the judgment is required because of our resolution of the negligence issue. We conclude that it is not.

Plaintiffs alleged several overlapping theories of tort recovery. Plaintiffs' damages, however, remain the same regardless of which particular theory of recovery is successful. The jury returned a separate verdict regarding each theory, but only a single, lump-sum award of damages. Thus, even if plaintiffs' negligence claim should not have gone to the jury, the damage award may be sustained because plaintiffs prevailed on their other claims. The result would be different had we been unable to discern the particular theory or theories upon which recovery was grounded.

Turning now to the cross appeal, plaintiffs first claim that the trial court erred in failing to grant Pamela Flones' motions for additur or for a new trial limited to damages on her claim for loss of consortium. The standard of review for each of those decisions is whether there was an abuse of discretion. *Moore v Spangler,* 401 Mich 360, 372; 258 NW2d 34 (1977); *Wilson v General Motors Corp,* 183 Mich App 21, 38; 454 NW2d 405 (1990). We agree with Dalman that plaintiffs presented much evidence regarding the damages sustained by Gary, but only a minimal amount pertinent to Pamela's claim. This is not a case where damages were uncontroverted. Rather, the jury was free to accept or reject Pamela's scant testimony regarding her damages. We conclude that the trial court did not abuse its discretion in denying plaintiffs' posttrial motions.

Plaintiffs also argue that the trial court erred when it granted Lieutenant Jarman's and Sergeant Boggs' motions for summary disposition before trial. The trial court granted the motions pursuant to MCR 2.116(C)(7) and (10). We find no error.

In a motion for summary disposition brought pursuant to MCR 2.116(C)(10), a court must give

the benefit of every reasonable doubt to the non-moving party and determine whether a record might be developed that will leave open an issue upon which reasonable minds could differ. *Werth v Taylor,* 190 Mich App 141, 145; 475 NW2d 426 (1991). The party opposing a properly supported C(10) motion has the burden of showing, by affidavit or other documentary evidence, that a genuine issue of material fact exists. *Mirza v Maccabees Life & Annuity Co,* 187 Mich App 76, 80; 466 NW2d 340 (1991).

Plaintiffs' argument that disputed issues of fact exist is unpersuasive. Whatever discrepancies exist between Dalman's account of his contacts with plaintiffs and plaintiffs' versions of the events are irrelevant to the issue of Boggs' and Jarman's tort immunity. Likewise, the dispute concerning the whereabouts of plaintiffs' automobile after it left the rest area is not a *material* fact with respect to the immunity question.

Plaintiffs also claim that the various intentional torts pleaded in their amended complaint against Boggs and Jarman involve ultra vires activities that are not protected by immunity. To the contrary, there is no intentional tort exception to governmental immunity. *Smith v Dep't of Public Health,* 428 Mich 540, 593; 410 NW2d 749 (1987), aff'd sub nom *Will v Dep't of State Police,* 491 US 58 (1989). We also reject plaintiffs' argument that their evidence that tended to show that the rest area operation did not conform to national police standards established that Boggs and Jarman acted outside the scope of their authority and that their acts were ministerial. See *Canon v Thumudo,* 430 Mich 326, 334-335; 422 NW2d 688 (1988). Further, that evidence is not proof of bad faith. Plaintiffs also claim that the operation's procedure for a mass booking of suspects in the presence of

the media raises "[a] question . . . whether or not this was a necessary police procedure or a grandstanding play to obtain press for the Michigan State Police at the expense of the accused Defendants." According to plaintiffs, the latter possibility may show bad faith. We believe, however, that this inference is unreasonable, and plaintiffs point to no other evidence in support of the proposition.

We conclude that the trial court did not abuse its discretion by denying plaintiffs' motions for additur and for a new trial regarding damages.

Affirmed.