*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL EDWARD CALLAHAN,

        Plaintiff-Appellant,

v

STATE OF MICHIGAN LEGAL SERVICES
ADMINISTRATION,

        Defendant-Appellee.

UNPUBLISHED
March 9, 2023

No. 360118
Court of Claims
LC No. 21-000152-MB

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Plaintiff appeals the Court of Claims' order granting summary disposition in favor of defendant for failing to state a claim upon which relief can be granted, and denying as futile plaintiff's motion to amend his complaint to add parties. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, acting *in propria persona*, filed a complaint naming only the "State of Michigan Legal Services Administration" (LSA) as a defendant. The complaint expressed numerous grievances for things that allegedly occurred over a decade against circuit court judges, county and municipal officials, and state entities, stemming from the issuance of personal protective orders (PPOs) against him, along with other civil and criminal matters. Although difficult to discern, his allegations relate to what he characterized as false, malicious, and unlawful prosecutions, fraudulent theft and conspiracy to commit fraud, defamation, violations of statutes and court rules, and constitutional violations. None of plaintiff's allegations were directed at the LSA or specified any action or conduct by the LSA, nor did plaintiff explain how the LSA in any manner contributed to his alleged injuries or damages. Aside from the caption, the complaint did not mention the LSA.

The LSA moved for summary disposition under MCR 2.116(C)(8) and (C)(10), on the ground that plaintiff failed to state a claim against it. With its motion, the LSA submitted an excerpt from the *Michigan Manual* to demonstrate that the LSA could not have had any

involvement in the alleged wrongful conduct.[1] In short, according to the LSA, plaintiff sued the wrong entity.

Plaintiff did not respond to the LSA's motion, but moved for leave to file an amended complaint. He attached a proposed amended complaint that reiterated his numerous grievances, but named the Ottawa Circuit Court, the Muskegon County Prosecutor's Office, the Muskegon County Sheriff's Department, the Fruitport Michigan Police Department, the "Michigan Department of Health and Human Resources,"[2] and the Offices of the Governor and the Attorney General as additional defendants. His proposed amended complaint, again, lacked any factual allegations regarding the LSA.

The Court of Claims granted summary disposition in favor of the LSA finding that, "plaintiff has failed to state a claim upon which relief can be granted, because defendant was not involved in any of the actions or inactions alleged in the complaint." Additionally, the court denied plaintiff's motion to file an amended complaint as futile on the ground that the Court of Claims "lacks jurisdiction over the named county and city departments . . . and as to the remaining state defendants the amended complaint fails to describe any involvement of those entities in the actions or inactions alleged to have deprived plaintiff of his rights." This appeal ensued.

## II. ANALYSIS

As an initial matter, plaintiff's pleadings are not clear, concise, or direct, making it difficult to fully comprehend the nature of his claims. He has not presented any legal argument directly or clearly addressing the Court of Claims' decision. "Generally, where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (quotation marks and citation omitted). " 'It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Id*., quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). This Court has recognized that "a person acting *in propria persona* should be held to the same standards as members of the bar." *Totman v Royal Oak Sch Dist*, 135 Mich App 121, 126; 352 NW2d 364

---

[1] MCL 24.24(1) provides as follows: "The legislative service bureau, under the direction of the legislative council, shall prepare and publish biennially an official state manual to be known as the 'Michigan Manual,' " which must include, among other things, "[a] complete list of all departments, boards, commissions, and agencies of the state government[.]" MCL 24.25(*ll*). The *Michigan Manual* describes the LSA's functions, in part, as follows:

> The Legal Services Administration (LSA) provides legal support to the secretary of state, and includes the Office of Legal Policy, Office of Hearings and Administrative Oversight, and Office of Investigative Services. The LSA also supports the Independent Citizens Redistricting Commission. [*Michigan Manual 2019–2020*, pp 414-415.]

[2] Presumably, plaintiff meant the Department of Health and Human Services (DHHS).

(1984). Nevertheless, mindful of plaintiff's *in propria persona* status, we consider his appeal, the thrust of which is that the Court of Claims should have allowed his lawsuit to proceed against the defendants named in his proposed amended complaint. See *Estelle v Gamble,* 429 US 97, 106; 97 S Ct 285; 50 L Ed 2d 251 (1976) (pleadings offered *in propria persona* should be liberally construed in the interests of justice).

## A. SUMMARY DISPOSITION

Plaintiff argues that the Court of Claims improperly granted summary disposition for failure to state a claim against the LSA upon which relief can be granted. We disagree.

"Review of a motion for summary disposition is de novo." *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Eason v Coggins Mem Christian Methodist Episcopal Church*, 210 Mich App 261, 263; 532 NW2d 882 (1995). This Court must determine "if the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery." *Id*. (quotation marks and citation omitted). "All factual allegations supporting the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts." *Id*. "However, mere conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *Id*.[3]

"A complaint must contain '[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend . . . .' " *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 305; 788 NW2d 679 (2010) (alteration in original), quoting MCR 2.111(B)(1). "[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Dalley*, 287 Mich App at 305 (alteration in original; quotation marks and citations omitted). A plaintiff may not leave "a defendant to guess upon what grounds plaintiff believes recovery is justified." *Dacon v Transue*, 441 Mich 315, 329; 490 NW2d 369 (1992). Thus, plaintiff had to plead factual allegations sufficient to inform the LSA of the nature of the claims against it.

Plaintiff's complaint lacked any allegations against the LSA. Even after the LSA raised the issue regarding the lack of any allegations against it in its motion, plaintiff made no attempt to explain how the LSA did anything for which it could possibly be held liable. Nor did he assert any allegations in his proposed amended complaint and he offers no explanation in this appeal. Moreover, the LSA provides legal support to several state governmental entities, none of which would involve or concern the allegations on which plaintiff based his complaint. We conclude that plaintiff has failed to demonstrate that any factual development could possibly justify a right

---

[3] The Court of Claims' conclusion that plaintiff failed to state a claim upon which relief could be granted indicating that it granted the LSA's motion under MCR 2.116(C)(8). We therefore need not consider the merits of the LSA's motion under MCR 2.116(C)(10), which tests the factual or evidentiary support for a plaintiff's claim. See *Burchell*, 249 Mich App at 479.

-3-

of recovery against the LSA. The Court of Claims, therefore, properly granted the LSA summary disposition under MCR 2.116(C)(8).

## B. AMENDED COMPLAINT

Plaintiff also argues that the Court of Claims abused its discretion by denying his motion to amend his complaint to add new parties. We disagree.

"We review a trial court's decision regarding a party's motion to amend its pleadings for an abuse of discretion. Thus, we defer to the trial court's judgment, and if the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *Wormsbacher v Phillip R Seaver Title Co, Inc*, 284 Mich App 1, 8; 772 NW2d 827 (2009) (citations omitted).

Under MCR 2.116(I)(5), the court shall permit amendment to pleadings "unless the evidence then before the court shows that amendment would not be justified." "Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons," such as "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the defendant, or futility." *Wormsbacher*, 284 Mich App at 8. "An amendment would be futile if it is legally insufficient on its face, and the addition of allegations that merely restate those allegations already made is futile." *Id*. at 8-9.

### 1. THE COUNTY AND MUNICIPAL DEFENDANTS

The Court of Claims properly denied as futile amendment to add the Muskegon County Prosecutor's Office, the Muskegon County Sheriff's Department, the Ottawa County Sheriff's Department, and the Fruitport Police Department as defendants. These nonstate actors are not subject to the jurisdiction of the Court of Claims.

"Whether the trial court had subject-matter jurisdiction is a question of law that this Court reviews de novo." *Council of Orgs & Others for Ed About Parochiaid v Michigan*, 321 Mich App 456, 463; 909 NW2d 449 (2017) (quotation marks and citation omitted). "Where a court lacks jurisdiction over the subject matter of a suit, any action with respect to such a cause, other than dismissal, is absolutely void." *Id.* at 466 (quotation marks and citation omitted).

"The Court of Claims is a court of legislative creation. Its statutory powers are explicit and limited." *Council of Orgs*, 321 Mich App at 466 (quotation marks and citation omitted). "MCL 600.6419, which *specifically outlines* the jurisdiction of the Court of Claims, contains a requirement that the action be 'against the state or any of its departments or officers . . . .' " *Id.* at 467.[4] Thus, the "Court of Claims lack[s] subject-matter jurisdiction over claims against nonstate

_____

[4] MCL 600.6419(1) provides in part as follows:

actors." *Id*. at 465. Included in the statutory definition of "the state or any of its departments or officers" is

> any state governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of the state, or an officer, employee, or volunteer of this state or any governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of this state, acting, or who reasonably believes that he or she is acting, within the scope of his or her authority while engaged in or discharging a government function in the course of his or her duties. [MCL 600.6419(7).]

Plaintiff's proposed amended complaint asserted numerous claims against the named county and municipal entities. Specifically, he alleged that the Muskegon County Prosecutor maliciously prosecuted him and allegedly withheld exculpatory evidence, committed fraud and conspiracy to commit fraud, defamed him by erroneously charging him as a habitual offender, and attempted to deprive him of his firearms. Plaintiff alleged that the county and municipal police departments unlawfully forced entry to execute a warrant, arrested him, and seized his firearms, resorted to improper methods of service, and demanded that plaintiff refrain from using the term "Sheriff" on his Facebook page in violation of his First Amendment rights.

However, the county and township police departments are not subject to the jurisdiction of the Court of Claims. See MCL 600.6419(7); *Doan v Kellogg Community College*, 80 Mich App 316, 320; 263 NW2d 357 (1977) (counties, cities, villages, and townships are "governmental instrumentalities [that] are never within the jurisdiction of the Court of Claims"). Likewise, the Muskegon County Prosecutor is a local official and not a state actor. See *Hanselman v Killeen*, 419 Mich 168, 188; 351 NW2d 544 (1984) ("[t]he county prosecutor and the sheriff are clearly local officials elected locally and paid by the local government").[5] Therefore, the Court of Claims properly denied as futile amendment to add the local entities as defendants on the ground that it

---

> Except as otherwise provided in this section, the [Court of Claims] has the following power and jurisdiction:
>
> (a) To hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court.

[5] In any event, the Muskegon County Prosecutor would be entitled to immunity. See *Imbler v Pachtman*, 424 US 409, 430; 96 S Ct 984; 47 L Ed 2d 128 (1976) (activity of a prosecutor that is "intimately associated with the judicial phase of the criminal process" is entitled to absolute immunity); *Bischoff v Calhoun Co Prosecutor*, 173 Mich App 802, 810; 434 NW2d 249 (1988) (MCL 691.1407(5) provides absolute immunity to a prosecutor, as the chief law enforcement officer in the county, if acting within the scope of his or her executive authority).

lacked jurisdiction over them. "A trial court does not abuse its discretion by refusing to permit an amendment when such amendment would be futile." *Formall, Inc v Community Nat'l Bank*, 166 Mich App 772, 783; 421 NW2d 289 (1988).

## 2. THE OTTAWA CIRCUIT COURT

The Court of Claims properly denied as futile amendment to add the Ottawa Circuit Court as a defendant. Not only were the circuit judges immune from civil actions for damages arising out of their judicial acts performed in their judicial capacity, the propriety of their orders from previous cases are not subject to collateral attack in a subsequent civil action. Plaintiff alleged that Ottawa Circuit Court Judges Jon Hulsing and Karen Miedema perpetrated numerous wrongs against him over a decade.[6] He characterized his claims as malicious prosecution, arising out of Judge Hulsing's issuance of numerous PPOs against him from 2012 to 2020; "fraudulent theft" and conspiracy to commit fraud, arising from Judge Miedema's dismissal of plaintiff's 2018 civil action against his ex-girlfriend, Veronica Marota, and award of attorney fees as sanctions against plaintiff, along with orders and judgments related to collection of the award; abuse of process or power, arising from the judges' alleged malicious conduct in issuing the PPOs and other orders against him; and numerous violations of Michigan statutes and constitutional violations, arising from the earlier circuit court proceedings.[7]

However, in presiding over the PPO, civil, and collection proceedings, and rendering decisions, orders, and judgments, the circuit judges were clearly undertaking judicial acts in their role as judicial officers and, therefore, were absolutely immune from civil liability. "It is well settled that judges are accorded absolute immunity from liability for acts performed in the exercise of their judicial functions." *Diehl v Danuloff*, 242 Mich App 120, 128; 618 NW2d 83 (2000), citing *Forrester v White*, 484 US 219, 225; 108 S Ct 538; 98 L Ed 2d 555 (1988). Indeed, "Michigan has always held that judges in performing judicial acts have an absolute privilege." *Ginger v Wayne Circuit Judge*, 369 Mich 680, 683; 120 NW2d 842 (1963). " 'The principle that judges and courts of superior jurisdiction are immune from actions based upon judicial acts may be said to be as old as the beginning of the English common law.' " *Ginger*, 369 Mich at 685, quoting *Mundy v McDonald*, 216 Mich 444, 454; 185 NW 877 (1921). "[A]bsolute immunity serves the dual purposes of protecting the finality of judgments and preserving the judicial independence by 'insulating judges from vexatious actions prosecuted by disgruntled litigants.' "

---

[6] Plaintiff did not name the judges as defendants in their individual capacities.

[7] Plaintiff listed, in his appellate brief, numerous laws and court rules that he claims the judges violated, but failed to develop argument explaining how they did so. Nor did he provide any authority for holding the circuit court institutionally liable because of these alleged violations. Again, plaintiff may not leave it to this Court to search for authority to sustain or reject his position. See *Yee*, 251 Mich App at 406. Likewise, he listed numerous constitutional provisions that he claims the judges violated, but did not develop his arguments. Nevertheless, the alleged violations and improprieties concern the substantive and procedural propriety of the circuit court's issuance of the PPOs. Plaintiff cannot now collaterally attack matters that were subject to the appellate process when initially decided.

*Diehl*, 242 Mich App at 128-129, quoting *Forrester*, 484 US at 225. "Accordingly, judges 'are not liable to civil actions for their judicial acts even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.' " *Serven v Health Quest Chiropractic, Inc*, 319 Mich App 245, 253; 900 NW2d 671 (2017), quoting *Bradley v Fisher*, 80 US 335, 351; 20 L Ed 646 (1871). Consistent with this common-law doctrine, MCL 691.1407(5) of the governmental tort liability act[8] likewise grants judges immunity from tort liability if they acted within the scope of their judicial capacity. See *Diehl*, 242 Mich App at 126.

Under these well-established principles, even if, as plaintiff alleged, the Ottawa Circuit judges acted maliciously, unlawfully, and improperly in carrying out their judicial acts, plaintiff could not bring a civil suit against them or the circuit court itself for those judicial acts. Moreover, plaintiff impermissibly attempts to collaterally attack the propriety of the circuit judges' decisions in this civil action. "It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a . . . decision in a previous proceeding[.]" *Workers' Comp Agency Dir v MacDonald's Indus Prod, Inc*, 305 Mich App 460, 474; 853 NW2d 467 (2014). Indeed, "mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until it is set aside it is valid and binding for all purposes and cannot be collaterally attacked." *Jackson City Bank & Trust Co v Fredrick,* 271 Mich 538, 545; 260 NW 908 (1935). "An impermissible collateral attack occurs whenever a challenge is made to judgment in any manner other than through direct appeal." *People v Iannucci*, 314 Mich App 542, 544-545; 887 NW2d 817 (2016) (quotation marks and citation omitted). See also *In re JCB*, 336 Mich App 736, 745-747; 971 NW2d 705 (2021) (foreclosing a respondent's challenge to the validity of a PPO in an appeal of a criminal contempt order for violation of a PPO, where he failed to timely challenge the PPO in the first instance); *Kosch v Kosch*, 233 Mich App 346, 353; 592 NW2d 434 (1999) (a defendant, who did not directly appeal a divorce judgment, was precluded from collaterally attacking the merits of the original child support provision in an appeal from a subsequent order modifying child support).

Here, plaintiff could have challenged the propriety of Judge Hulsing's or Judge Miedema's decisions in direct appeals, see MCR 3.709 (appeals after entry of a PPO); MCR 7.204(A)(1) (appeals by right); MCR 7.205 (delayed applications for leave), or, perhaps, by petitioning an appropriate tribunal to exercise superintending control over the circuit court, see MCR 3.302 (providing that the Supreme Court, the Court of Appeals, and the circuit court have jurisdiction to issue superintending control orders to lower courts where no other remedy is available).[9] These avenues provided plaintiff with the means to remedy any wrongful, improper, or unconstitutional actions by the circuit judges related to the issuance of the PPOs, the dismissal of his 2018 civil

---

[8] MCL 691.1401 *et seq.*

[9] Additionally, "Michigan has provided for other means of supervising our judiciary so that if judges abuse the important position they occupy, they may be properly disciplined." *Ginger*, 369 Mich at 686. See Const 1963, art 6, § 30 (creating a Judicial Tenure Commission and permitting the Supreme Court, upon the commission's recommendation, to censure, suspend, retire, or remove a judge for misconduct in office); Const 1963, art 6, § 25 (removal of judges from office by the governor); MCR 9.202.

case against Marota, and imposition of attorney-fee sanctions in that case along with the rulings and orders related to collection efforts.[10]  In short, plaintiff's claims against the circuit court, which ultimately challenge the propriety of the judges' past orders and decisions, constitute impermissible collateral attacks on the results of those closed cases.  See *Iannucci*, 314 Mich App at 544-545; *Workers' Compensation Agency Dir*, 305 Mich App at 474; *Kosch*, 233 Mich App at 353.  For these reasons, we conclude that the Court of Claims did not abuse its discretion in denying as futile amendment of plaintiff's complaint to add the Ottawa Circuit Court as a defendant.

### 3.  THE DHHS

We also conclude that the Court of Claims properly denied as futile amendment to add the DHHS as a defendant.  The DHHS is immune from tort liability in connection with the exercise or discharge of its governmental functions and, regardless, plaintiff has not alleged an actionable claim.

Plaintiff's attempt to assert a claim of malicious prosecution against the DHHS is strained, at best.  It apparently stems from the alleged involvement of the DHHS in what plaintiff characterizes as the "prosecution" of Marota's alleged false allegations of child abuse of their child that she made against plaintiff to the department and the police, which allegedly led to plaintiff's placement on the central registry.[11]  For a claim of malicious prosecution, a plaintiff

> has the burden of proving (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. [*Matthews v Blue Cross & Blue Shield*, 456 Mich 365, 378; 572 NW2d 603 (1998).]

---

[10] The record does not indicate that plaintiff ever challenged the propriety of the PPOs in direct appeals.  Plaintiff did appeal Judge Miedema's dismissal of his civil action against Marota, and imposition of the attorney-fee sanction against him, to this Court, and this Court affirmed. *Callahan v Marota*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2020 (Docket No. 349454).  In that case, plaintiff apparently attempted to challenge the trial court's issuance of the various PPOs, but this Court declined to address that, *Callahan*, unpub op at 3-4, stating "there is no indication that plaintiff ever appealed the PPOs, and the record before the court is insufficient to allow review of the issues raised, even if such a review were warranted." *Id*. at 4. Thus, plaintiff's instant civil action against the circuit court represents yet another attempt to collaterally attack the judges' orders.

[11] The "central registry" is "the system maintained at the department that is used to keep a record of all reports filed with the department under this act in which relevant and accurate evidence of child abuse or child neglect is found to exist."  MCL 722.622(c).  "Department" means "the department of health and human services."  MCL 722.622(q).

Here, although Marota's alleged conduct, if she knowingly made false claims to law enforcement in order to induce prosecution of plaintiff, might support a claim of malicious prosecution against her,[12] see *Renda v Int'l Union UAAAIWA*, 366 Mich 58, 83; 114 NW2d 343 (1962); MCL 600.2907, plaintiff did not name any individuals, employees, or representatives connected to the DHHS, who investigated, or otherwise pursued Marota's claims without a lawful basis to do so. Under MCL 722.628(1), the department must commence an investigation of a child suspected of being abused or neglected. Plaintiff did not specify how any DHHS agent responded to Marota's claims with any improper purpose. Although plaintiff alleged that Marota's claims were false and made to "garner parental control" of their child, he made no specific allegations indicating that any individual associated with the DHHS had knowledge of Marota's ulterior motive or otherwise had reason to suspect that Marota's claims were false.[13] In short, plaintiff did not specify how any DHHS representative acted maliciously by investigating Marota's claims or placing him on the central registry.[14] Instead, he merely alleged that Marota's allegations were false and, without more, that defendants acted with malice in response. Such conclusory allegations, however, are not sufficient to state a cause of action. See *Kloian v Schwartz*, 272 Mich App 232, 240; 725 NW2d 671 (2006).[15]

Further, even if plaintiff did sufficiently plead facts constituting malicious prosecution on the part of the DHHS, such claim is barred by governmental immunity. MCL 691.1407(1) broadly exempts governmental agencies from tort liability in connection with the exercise or discharge of their governmental functions. See *McLean v McElhaney*, 289 Mich App 592, 598; 798 NW2d 29 (2010). The DHHS is a principal department of the State of Michigan, see MCL 400.227, and is clearly a governmental agency entitled to immunity.[16] Investigating allegations of child abuse and

---

[12] Plaintiff pursued such a claim of malicious prosecution in his 2018 civil case against Marota.

[13] We note that "[a] person making a report . . . is presumed to have acted in good faith." MCL 722.625.

[14] We question whether plaintiff's placement on the central registry, in and of itself, could constitute a "prosecution." See Restatement 2d of Torts, § 653, comment c ("The making of the charge is not actionable . . . unless a prosecution actually results from it, or, in other words, unless criminal proceedings are instituted against the accused by the tribunal or official before whom the charge is made[.]") A criminal prosecution begins when the prosecutor files an information or indictment, MCR 6.112(B), and a child protective proceeding begins with the filing of a petition, MCR 3.961(A). See also MCL 712A.2(b).

[15] Plaintiff further implicated the DHHS by asserting that its "[u]nlawful distribution and unlawful mass quantity administration of the drug Benzodiazepines" to Marota caused her to report false crimes that led to his false and malicious prosecution. This allegation is not only speculative, but seems inherently incredible. Further, that Marota made false child abuse claims ostensibly because of the DHHS's administering drugs to her, without more, asserts too remote a consequence to hold the DHHS responsible for the alleged malicious prosecution of plaintiff.

[16] "Governmental agency" means "this state or a political subdivision" MCL 691.1401(a). "State" means "this state and its agencies, departments, commissions, courts, boards, councils, and statutorily created task forces." MCL 691.1401(g).

placing an individual on the central registry are statutorily mandated activities of the DHHS, and thus those activities underlying plaintiff's complaint are clearly governmental functions. See MCL 722.627(4) ("If the department classifies a report of suspected child abuse or child neglect as a central registry case, the department shall maintain a record in the central registry."); MCL 722.627(5) to (7) (providing for expungement of record from the registry); MCL 722.627(7) (providing for maintenance of information in the central registry after investigation of abuse allegations); MCL 722.628 (governing the department's investigations). Accordingly, the DHHS has governmental immunity from plaintiff's claims. See MCL 691.1407. The Court of Claims, therefore, did not abuse its discretion by denying as futile amendment of plaintiff's complaint to add the DHHS as a defendant.

#### 4. OFFICES OF THE GOVERNOR AND ATTORNEY GENERAL

The Court of Claims properly denied as futile amendment to add the Offices of the Governor and Attorney General as defendants. Plaintiff failed to assert a cognizable claim against them and, regardless, governmental immunity applies.

Plaintiff briefly asserted in his proposed amended complaint that the Governor and Attorney General failed to perform legal duties to respond and investigate his complaints. He refers this Court to correspondence he apparently sent to those offices informing them of what he characterized as unlawful and malfeasant conduct, particularly by the judges of the Ottawa Circuit Court, and demanded that the Offices of the Governor and Attorney General initiate a criminal investigation.

Plaintiff's claim, alleging that these public offices failed to perform their legal duties to respond and investigate his complaints, implies a claim of common-law misconduct in office, see MCL 750.505 (providing for punishment for indictable common-law offenses).

> To find defendant guilty of the criminal offense of misconduct in office, the defendant must be found to be a "public officer," who while acting "in the exercise of the duties of his office or while acting under color of his office," did "any act which is wrongful in itself—malfeasance," did "any otherwise lawful act in a wrongful manner—misfeasance," or failed to "do any act which [was] required of him by the duties of his office—nonfeasance." [*People v Carlin*, 239 Mich App 49, 52 n 2; 607 NW2d 733 (1999) (alteration in original), quoting Perkins & Boyce, Criminal Law (3d ed), p 540.]

Plaintiff's proposed amended complaint seeks money damages to redress the alleged wrongful conduct of the proposed defendants, but plaintiff has not cited any authority for the proposition that the existence of a purported common-law crime reflects the existence of a parallel common-law tort. Moreover, he did not name the Governor or the Attorney General individually, only their respective offices. To the extent plaintiff attempted to assert a claim of ordinary negligence against the Offices of the Governor and Attorney General for allegedly failing to respond to or investigate his complaints, such claim is invalid. "There can be no negligence absent a duty, and a plaintiff has the burden of showing a duty owed by a defendant to the plaintiff." *Flores v Dalman*, 199 Mich App 396, 402-403; 502 NW2d 725 (1993). "A duty is a legally recognized obligation to conform to a particular standard of conduct toward another." *Harrison v*

*Dir of Dep't of Corrections*, 194 Mich App 446, 456; 487 NW2d 799 (1992). "Where the duty of a public official arises from his official authority, the duty is for the benefit of the public at large," not to a specific individual. *Id.* Here, plaintiff did not allege a specific duty to the general public to investigate or otherwise respond to claims of citizens, or that a special relationship existed with those offices such that they had a duty to investigate his claims. See *id.* at 456-460; *Flones*, 199 Mich App at 403 (rejecting the plaintiff's theory of "negligent investigation" in different context).

Nevertheless, even if plaintiff could otherwise set forth a plausible claim, the Offices of the Governor and Attorney General were entitled governmental immunity from tort liability. See MCL 691.1407(1). Those offices are governmental agencies, and thus are immune from tort liability in connection with the exercise or discharge of their governmental functions. See MCL 691.1407(1); *McLean*, 289 Mich App at 598. Exercising discretion whether to investigate or otherwise respond to a constituent's complaints falls squarely within the exercise or discharge of governmental functions. Moreover, to the extent plaintiff implies that the Governor and Attorney General themselves acted wrongfully, despite not naming them as individual defendants, they come under the absolute immunity granted to "the elective or highest appointive executive official of all levels of government" by MCL 691.1407(5) for acts within the scope of their executive authority. The Court of Claims, therefore, properly denied as futile amendment of plaintiff's complaint to add the Offices of the Governor and Attorney General as defendants.

## 5. NEGLIGENT HIRING

Plaintiff failed to allege sufficient facts to state a claim of negligent hiring against the named actors. "[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 566, 574; 918 NW2d 545 (2018). "[A] claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the *specific* wrongful conduct perpetrated by an employee predictable." *Id.* at 575.

Plaintiff made no specific allegations of any specific inadequacy or deficiency regarding any of the named actors' hiring processes, training, or supervision of employees. Nor did he allege that they had specific knowledge that their employees would act wrongfully, or failed to take appropriate action if the employees did so. In short, plaintiff made only brief and conclusory statements, with little explanation, and failed to sufficiently allege how any actions or inactions by the governmental entities in their personnel decisions, supervision, or training caused his alleged injuries. Plaintiff failed to sufficiently plead a negligent hiring claim in his proposed amended complaint, making amendment to add such a claim futile. The Court of Claims, therefore, did not abuse its discretion by denying plaintiff's motion for leave to amend his complaint.

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ Christopher P. Yates

-11-